## MEGGINSON v BILAN

Ohio Appeals, 6th Dist, Lucas Co
No 2433.  Decided Jan 12, 1931

Kirkbride, Boessel, Freese & Cole, Toledo, for Megginson.
Ritter & Brumback, Toledo, for Bilan.

WILLIAMS, J.

The evidence adduced on behalf of the plaintiff below tendered to show that he was riding his bicycle on the right hand side of the street and that the defendant below turned out of the line of traffic and into his bicycle.  The evidence adduced by the defendant tended to show that she was driving her automobile on the right hand side of the street and that the plaintiff ran his bicycle into her car.  We are unable to say that the verdict is manifestly against the weight of the evidence.

Plaintiff suffered very severe injuries. His skull was fractured and as a result thereof he suffered paralysis of the shoulder, arm and hand.  At the time of the last trial the muscles of his arm and shoulder were atrophied and he has what is sometimes referred to as a withered arm.  Plaintiff offered evidence tending to show his injuries were permanent and that he would probably be compelled to have the arm amputated at the shoulder.  Under the circumstances we can not say that the verdict is excessive.

The claimed error as to the admission of evidence relates to testimony regarding a telephone conversation between the defendant and one Raab.  Raab himself did not testify, but Peter Bilan, the father, testified that Raab called Mrs. Megginson up and that he stood near the phone and heard what both of them said.  It seems that there were three conversations which took place under such circumstances and Mrs. Megginson admitted that she talked three times with Raab.  The testimony of Peter Bilan as to these conversations was competent.  **Licciardi v State, 18 Oh Ap, 118, 123, 124.**  With reference to the third of these conversations, the following appears in the record:

"Q.  You may state whether or not Mr. Raab called her up again the third time? A.  It was the next day.  Q.  The next day? A.  Yes, sir.  Q.  And about what time of the day was that?  A.  Some time in the morning, about after nine.  Q.  You may state whether or not you heard the conversation, both ends?  A.  Yes, sir.  Q. How did you hear what she said to that?  A.  I was holding the phone, with Mr. Raab, together.  Q.  What did he say to her then, and what did she say?
Objection, overruled, exception.
A.  He asked her again about the accident, and she said she got nothing to do, I should go to see the insurance company."

It is claimed that there was error in the admission of this evidence.  It appears that the only exception taken was to the overruling of an objection to the last question. It is apparent that this question was perfectly competent and the ruling of the court was correct.  The answer to that question, however, is such as to imply that the defendant carried liability insurance.  It is not

necessary for us to determine in this case whether or not testimony as to conversations with a defendant, in which he admits he carried liability insurance, is or is not admissible against him, for the reason that that question is not raised by the record, as there was no motion to strike out the whole or any part of the answer. As the question was itself proper, the trial court never ruled upon the competency of the answer, nor was the question of its competency ever raised by motion or otherwise on the trial of the case. There was, therefore, no prejudicial error in the rulings of the court as to the admission of evidence.

There being no reversible error apparent upon the face of the record, the judgment is affirmed.

RICHARDS, J, concurs.

LLOYD, J, dissenting.

An examination of the record discloses that the evidence on the question of liability for the injury sustained by defendant in error, was such that the jury, with quite as much propriety and with equal probability of having arrived at the truth, might have returned a verdict in favor of the plaintiff in error, Mrs. Megginson. This situation makes all the more important the statement of the witness as to the telephone conversation had with Mrs. Megginson as to the "insurance company." True, the question evoking the answer may have been proper, assuming as I do, that counsel asking the question did not know what the answer was to be. None-the-less obvious is the fact that none of the testimony quoted in the majority opinion has any probative value; none of it relates to any issue made by the pleadings; all of it leads simply and solely to the final answer informing the jury that Mrs. Megginson carried insurance. To have requested the court to strike the answer from the record, with the formal admonition of the judge to the jury to disregard it, could not and would not deprive the jury of the knowledge thus acquired, and however much we may theorize about it, we know that the strong probabilities are that in cases of this sort knowledge that an insurance company, rather than the defendant, must pay the amount of any verdict returned in favor of the plaintiff, does have a prejudicial effect. In the instant case no part of the answer was proper or material and could not in any way rightly assist the jury in determining the liability or nonliability of the defendant.

The instant case is not one where counsel has requested specific action on the part of the court with respect to prejudicial testimony in no way related to the issues involved, and upon exact compliance by the court with the request so made, is satisfied therewith and requests no further action by the court, but a case where it was left to the initiative of the court to accept the responsibility and act accordingly, because the testimony was immaterial and prejudicial. Nor is this a case like Frank v Corcoran, 25 Oh Ap, 356, where for similar and other reasons conversations "containing reference to whether defendant carried liability insurance" was held not prejudicial error. Nevertheless in that case this court said in its opinion at page 358, "the rule is clear, and the law well settled, that admission of testimony of this kind is clearly erroneous."

We must of course, have rules of practice, but these rules should not be so technically inflexible as to serve as an excuse for tolerating palpably improper admission in evidence of prejudicial facts in no way related to the issues made by the pleadings, the object sought to be attained being a fair, impartial and unprejudiced trial. In my opinion the trial judge should have acted upon his own initiative and immediately have sought to rectify the error, even though the situation created necessitated the withdrawal of a juror and the continuance of the case, or later, the granting of a new trial.

Although the judgment therein was affirmed for reasons stated in the opinion, it seems to me, that what was said by this court in Thatcher v Railroad, 33 Oh Ap, 242 as to waiving error by failure to object or except, is especially pertinent to the question under discussion. At page 246 of the opinion therein, in which all of the members of this court concurred, it is said: that

"If misconduct of counsel has improperly influenced the jury * * * the trial judge, regardless of whether objections and exceptions have been noted thereto, has the power to and should grant a new trial."

In that case the question related to the alleged misconduct of counsel, whereas in the instant case it relates to the apparently innocent, but none-the-less harmful, injection into the record of extraneous and prejudicial facts.

In the case of Wilson v Wesler, Admx, 27 Oh Ap, 386 at page 389, it is said:

"The rule is that testimony must relate to the issues made by the pleadings. There was no issue to which this testimony could, in the remotest degree, be relevant. The rule is stated thus: 'Testimony that the defendant in an action for negligence is insured in a casualty company, or that the

defense is conducted by an insurance company, is incompetent, and so dangerous as to require a reversal even when the court strikes it from the record and directs the jury to disregard it, unless it clearly appears that it could not have influenced the verdict."

(Citing a number of cases).

The court, quoting from an opinion of the Supreme Court of South Carolina, continues:

"Such evidence or argument has a manifest and strong tendency to carry the jury away from the real issue and to lead them to regard carelessly the legal rights of the defendant on the ground that some one else will have to pay the verdict."

My conclusion therefore is, that the judgment should be reversed.