OPINION
By GEIGER, PJ.
This matter is before this Court upon an appeal by the defendant from the judgment of the court of common pleas rendered the 9th day of June, 1941, on verdict of a jury for the sum of $15,536.58.
In the amended petition it is asserted that First Street and Perry Street are in the built up portions of the city of Dayton; that First Street is a through street running eastwardly and westwardly intersected on the south side at right angles by Perry Street running northwardly and southwardly but coming to a dead end at First Street.
It is alleged that on June 28, 1940, at about 12:30 A. M., plaintiff was walking west on First Street on the south side thereof and upon arriving at the southeast corner where said streets intersect, he continued his westerly course and proceeded to cross Perry Street in the designated crosswalk and when he- was 5 feet from the west curb line he was struck by the car of the defendant, going north on Perry Street, suffering the injuries complained of.
It is alleged that the injuries were due to the negligence of the defendant, set out in five special allegations,
(1) In operating the vehicle on the left side of the center of the *114 street in violation of the statute and ordinance.
(2) In operating the vehicle at a speed of 30 miles and failing to bring it to a stop within the assured clear distance ahead, in violation of the statute.
(3) In failing to observe the stop sign located in the center of Perry Street.
(4) Failing to bring his vehicle to a full stop at said intersection in violation of the ordinance, which provides that a driver of a vehicle shall stop in obedience to a stop sign at the intersection where a stop sign is erected; that the driver of a vehicle on any of the listed streets shall bring the same to a full stop before proceeding to cross the corresponding intersecting street; that Perry Street is a stop street at the intersection.
(5) Failing to yield the right of way to plaintiff who, as a pedestrian, was crossing said street in the cross walk, in violation of the ordinance of the city to the effect that the driver of any vehicle shall yield the right of way to a pedestrian crossing any street in compliance with paragraph (a) of the ordinance.
It is alleged that as a result of being struck the plaintiff sustained injuries and was put to expense as set out in said petition and that by reason of said injuries he was damaged in the sum of $15,536.58, for which he prays judgment.
The defendant for his answer admits the allegations as to the street intereseetion; that at the hour designated the plaintiff was walking on the south side of First Street and upon arriving at the southeast corner plaintiff continued in a westerly course and that the plaintiff and the defendant’s automobile, going north on Perry Street, came in contact and that the plaintiff was injured, but denies injuries to the extent as asserted in the petition.
Defendant denies that the collision was due to the negligence of the defendant, as claimed in the amended petition, but avers that the accident and damages arising therefrom weve caused by the carelessness and negligence of the plaintiff.
For reply the plaintiff denies that the injuries sustained by him were caused by any negligence on his part and denies every other allegation of the answer.
The cause came on for trial and being submitted to the jury, a verdict in the amount stated was returned and a judgment was entered thereon.
The defendant gave notice of an appeal from the judgment upon questions of law.
The defendant assigns eight grounds of error which may be epitomized as follows:
Error of the court in refusing to give special charges before argument; in admitting evidence of the plaintiff; refusing to admit evidence of the defendant; error in its general charge to the jury; that the verdict was contrary to the weight of the evidence and the law and was excessive; error in overruling motion of defendant for new trial; other errors.
That we may better understand the evidence in this case we note the situation, so far as traffic lights are concerned, at the point where Perry Street intersects but does not cross First Street. In the middle of Perry Street and extending north and south in a row of brass disks fastened to the surface of the street. These disks are about 2% inches in diameter and are placed in a straight line north and south in the middle of Perry Street about fifteen inches from each other. When this row of disks, extending north and south, reaches *115 ■a point opposite the south marginal line of the street, it branches at a right angle and continues to the curb line of Perry Street so as to mark the south line of the crosswalk. These disks also continue noi'thward to about the middle ■of First Street. About 2% feet east •of the center line of Perry Street and in the line of the brass disks, extending east and west, there is fastened to the surface of the street what is designated in the record as a “button” but which is really a metal block about fifteen inches in length and six inches in width. It is so placed and fastened to the street as to present a slanting surface to an automobile approaching from the south. On this slanting surface in fair size letters appears the word “stop”. The traffic light on the west side of Perry Street is so hooded as to give an imperfect signal to a pedestrian crossing Perry Street. It is so constructed as to control the automobile traffic going eastward on First Street and the traffic on Stratford Avenue, which extends at an ■angle of forty-five degrees across First Street northwesterly toward Monument Street and from thence to the bridge over the river. When this traffic light is showing green for vehicular traffic on First Street, it shows red as against the traffic on Stratford Avenue and vice versa. In the middle of Stratford Avenue there is a beacon light that guides the flow of traffic on Stratford Avenue. On the north side of First Street, which is 35 feet wide at this point, and directly opposite the center line of Perry Street, there is a traffic light but it is blank so far as traffic flowing-northward on Perry Street, its purpose being to control traffic east and west on First Street but to convey no signal to traffic entering First Street from the south. This peculiar arrangement of traffic lights is unusual and is apparently due to an attempt to protect vehicular traffic flowing upon Stratford Avenue and on First Street west of the intersection of Perry Street.
There does not seem to be a great deal of controversy between the parties as to the essential features incident to the collision between the plaintiff as he walked westward and the defendant as he drove his car north on Perry Street. We will summarize the statements of facts of opposite counsel bringing into contrast the differences that are disclosed by these statements.
The defendant-appellant describes the situation as to Perry Street, First Street and Stratford Avenue. Counsel states that on the north side of First Street, in the middle of Perry Street extended, is a traffic light shining east on First Street. Counsel is correct in not stating that it is a traffic light showing southward to regulate the traffic flowing northward on Perry Street. Counsel describes the situation as to lights on the southwest corner of Perry and First Streets by correctly stating that just west of the curb of Perry Street are two traffic lights, one shining west on First Street and the other northwest on Stratford Avenue. Perry Street at the point of its intersection with First Street is designated by the ordinance of the city of Dayton as a “stop” street. Counsel states that on the south edge of the crosswalk and about three feet east of the middle line of Perry Street was the “stop button” so placed as to show the word “stop” southward on Perry Street.
Counsel state that at approximately. 12:30 A. M. the defendant was driving his car northwardly on Perry Street and approached the intersection of First Street. He *116 knew that Perry Street was a stop street and knew of the presence of the “stop button”, but did not know its exact location. Counsel states that as defendant approached within a few feet of the crosswalk, he reduced his speed to four or five miles per hour and looked eastward before entering the crosswalk, but saw no pedestrian there. Counsel describes the. location of a tree on the east side of Perry Street on account of which he claims that a pedestrian going westward would have been invisible to the driver of the car. (We are not convinced that this tree would obstruct the vision so as to prevent the discovery of a pedestrian.) Seeing no one, the defendant proceeded slowly across the crosswalk approaching the curb line of Perry Street. In order to see westward on First Street it is asserted that it was necessary for the driver of a vehicle coming out of Perry Street to drive to the curb Hne of First Street extended before stopping because of a cement wall on the southwest corners of Perry and First Streets with some adjacent shrubbery, and thar it was difficult to see approaching traffic coming southeast out of Stratford Avenue without driving to the curb line of First Street on account of the traffic beacon before alluded to. This does not appear to be so as the vision along Stratford Avenue is clear from any point along the south side of the crosswalk. Counsel points to the arrangement of the various traffic lights and it is then stated that the defendant was driving his car at a slow speed to a position where he could see east bound traffic; that while he was so proceeding, the plaintiff walked from the east, on the crosswalk directly in front of his car, defendant not seeing the plaintiff at all as he was looking west for east bound trafile. He felt the bump and within five or six feet of the place where plaintiff was hit he brought his car to a stop, the front end of his car not having reached the First Street curb line extended.
Counsel for plaintiff in his statement of facts describes them much as did counsel for defendant. He describes the location of the metal block with the word “stop” showing to the persons going northward. Counsel states the plaintiff was engaged in night work at the Gallaher Drug Store and about midnight walked westward on First Street and after stopping at the corner of First and Perry, looked to the north and south and crossed the crosswalk in the center of the same and that when he had reached a point in the middle of Perry Street he was struck by the left front fender of the automobile driven by the defendant.
Both counsel state incidents occurring after the injury reciting that the plaintiff was thrown to the street and picked up in a semiconscious condition and taken to the hospital, where he remained from the 28th day of June to the 17th day of August, after which he was taken to his home for further nursing.
We have read the evidence as set out in the bill of exceptions. We find that both plaintiff and defendant were familiar with this interesection between Perry Street; and First Street, each having traveled over it for several years. The use of the brass disks to designate the center line of the street and the limits of the crosswalk together with the use of the “stop button” are familiar devices on the streets of Dayton.
There is, of course, some difference in the testimony of the plaintiff and defendant as well as the supporting witnesses of each, but *117 it would appear that the plaintiff, walking on the south side of First Street, reached the intersection of the east line of Perry Street at the point of the indicated crosswalk. It also appears that the “stop button” was about three feet east of the center line of Perry Street.
The plaintiff relates the circumstances leading to the accident substantially as follows, Pages 107, et seq. of the record, to the effect ¡that it was his custom to go west 'on First Street on his journey to 'his home; that when he reached the curb line of Perry Street, he looked north and south and did not see any cars coming. There was a parked car to the south on the east side of the street by an alley. Another car was coming. Plaintiff stated he started to cross the street, “Because I knew I could make it across the street with a car so far away”. He proceeded in the middle of the crosswalk going west. When he had walked past the middle of the street the car was coming faster than he had thought. “It was right on top of me when I realized I had been .struck. I started to run a little and that’s all I remember.”
The defendant relates the circumstances, first on cross-examination, at page 2, et seq. of the record, and later on direct examination, page 144, et seq. of the record. He states that at the time and place of the accident he was en-route home having been at the Holden Hotel listening to the returns of the Republican National ■Convention. He was familiar with the route having passed over it for ten years. He remembered feeling a bump on his Packard car .at the left front fender. He did not •see the plaintiff. “I was looking-down the street” to the left for -automobile and pedestrian traffic coming from the west on First Street. His car was straddling the marker with the front end north of the stop sign. He did not stop at the “button” before he crossed the crosswalk but was driving very slowly. He did not stop at all until after he had hit the man. He had his lights on but this did not disclose the plaintiff as he was proceeding on the crosswalk.
In his direct examination he reiterates, in part, his statements made on cross examination as above related.
Defendant later went to the hospital and made a written statement to the police officers, plaintiff’s Exhibit “B”, as follows:
“I was proceeding northwardly on Perry Street and intended to make a left turn into Stratford Avenue. I was driving slow and I did not stop before entering First Street. I did not see a pedestrian that was crossing Perry Street walking westward on First Street. The left front corner of my ear struck the pedestrian.”
On the 5 th of July, an affidavit was filed in municipal court charging defendant with operating his car without due regard to the rights of pedestrians, etc. in the following particulars,
“That he drove northwardly on Perry Street, failed to make the required safety stop before entering First Street and in so doing, struck a pedestrian who was crossing westwardly in the crosswalk from east to west, said pedestrian being William Hansen.”
He plead guilty to the above charge. Some of the witnesses who congregated at the point of collision testified that he then admitted it was his fault the accident occurred.
We think the jury was justified, from the evidence and the admission of the parties, in arriving at *118 the conclusion that the defendant did not stop his car at the “stop” sign fastened to the street along ■the south edge of the crosswalk, but proceeded at least the full length of his car north with the purpose of approaching the south curb line of First Street projected across Perry Street, his purpose apparently being to protect himself against vehicular traffic approaching from the west on First Street and on Stratford Avenue. He did not see the pedestrian due more to the fact that he was observing the vehicular traffic than any reason why the presence of the pedestrian would not be disclosed.
There is some difficulty in determining at what point on Perry Street the plaintiff was struck. Ail ■witnesses agree that he was struck by the left front fender of defendant’s car and the testimony seems to indicate that after this impact the defendant stopped his car directly over the “stop button” in the south -line of the crosswalk, the button being, at the time he stopped, directly under the middle of his rear axle. This would indicate that before he stopped he had passed over the “stop button” at least the length of his Packard car.
ASSIGNMENT OF ERRORS
(1) Error of the court in refusing to give the special charges before argument requested by the defendant.
The request for special charge No. 1, asked by defendant and refused by the court, related to the provisions of Section 253-1 of the ordinance which designated Perry Street as a “stop” street and provided that the driver of a vehicle, on a stop street, shall bring the same to a full stop “before proceeding to cross the intersecting street”. The request was,
“I charge you that before any driver of a motor vehicle can be found to have violated the provisions of this Ordinance, you must find that some portion of the motor vehicle which he was driving protruded beyond the curb line of' the intersecting street, before said vehicle was brought to a stop.”
It is asserted by counsel that the provisions of the Ordinance in reference to stop streets is that the 1 driver shall stop in obedience to a stop sign “at an interesection where a stop sign is erected” and further the driver proceeding on any street designated as a stop street shall bring his car “to a full stop before proceeding to cross the corresponding intersecting street.’'
It is urged by counsel that the place of stopping provided by the Ordinance was before proceeding to cross the corresponding intersecting street and that thére was nothing in the Ordinance granting to the police department authority to prescribe the place of stopping by the location of a stop sign. The Ordinance merely designates the stop streets and does not provide for a stoppage of the car before it reaches the curb line of the intersecting street. It is urged that under the “stop street” section the power is not granted to provide for the stopping of the car before it reaches the intersection of the curb line.
We can not agree with counsel upon this point. If his interpretation be true, it would result in withdrawing from the protection, of the pedestrian a stop sign which would require a car to stop at a crosswalk used by the pedestrian. The purpose of the ordinance is to equally protect pedestrian and vehicular traffic and when a stop sign is displayed on the sur *119 face of the street it requires that the stop be made at this point and does not permit a car to be driven across the stop plate and the crosswalk until it reaches the extended curb line of the intersecting street. The purpose of the Ordinance is to provide for the stopping of the car before reaching a point where the pedestrian crosses.
The plat (Defendant’s Exhibit 4) discloses the fact that between the south marginal line of First Street and the south curb line extended there is a distance of sixteen feet devoted to pedestrian traffic and sidewalk location with appropriate crosswalk provisions. We therefore find that the court did not err in refusing the requested charge No. 1.
It is assigned as an error that the court refused to grant the request for special charge No. 2, as follows:
“I charge you that an automobilist is not required in the exercise of ordinary care to keep his eyes constantly fixed upon every inch of the thoroughfare ahead of him, nor is he required to assume that others will be using the highway in his line of travel unlawfully, but when in the exercise of ordinary care, he has discovered that there is an object unlawfully in his line of vision, it is his obligation to use due care to avoid striking it.”
It is stated that this is a charge taken directly from Hess v Kroger, 17 O. Abs., 225. Whether or not it is a correct charge in the case there under review we need not determine, but it is not correct in the present case, as it is a charge that the driver need not anticipate that any one is using the highway in his line of travel unlawfully. There is no evidence that discloses that the plaintiff was using the crosswalk unlawfully and the charge was therefore properly refused.
Counsel for appellant skillfully urges that the circumstances disclose that the defendant was unlawfully using the crosswalk but we feel that he has failed in this attempt.
It is further alleged that the court erred in refusing to give the defendant’s request for special charge No. 4, which is to the effect that under the requirements of the Ordinance the driver shall “yield” the right of way to a pedestrian. In commenting on the statute granting right of way to pedestrians, the requested charge stated,
“This presupposes the knowledge by the driver of said vehicle of the existence of the pedestrian and his use of the crosswalk; and should you find that the defendant herein, at the time of the collision between plaintiff and defendant’s motor vehicle, had no actual knowledge of the presence of the plaintiff on the crosswalk, then the Ordinance requiring the driver of a motor vehicle to yield the right of way to a pedestrian, as aforesaid, has no application to the facts in this ease.”
Counsel urges that the use of the word “yield” in the Ordinance presupposes that the driver of the vehicle must be conscious of the presence of the pedestrian before the Ordinance would be effective, the argument being that the very use of the word “yield” indicates that there must be a known presence of the pedestrian.
*120 *119 We do not so read the Ordinance. It is simply a statement that the driver of the automobile must yield to the pedestrian’s right. This yielding does not necessarily imply a known conflict *120 between the rights of the driver and of the pedestrian, but does indicate that the driver must have due regard for the rights of a pedestrian whose presence may or may not be discovered. The interpretation urged by counsel would result in a privilege being extended to the driver of the automobile to drive his car over the crosswalk at such a speed that he could not discover the actual presence of the pedestrian. This would be an unreasonable interpretation of an Ordinance which is primarily for the purpose of declaring that as between a pedestrian and a driver of a vehicle, the pedestrian shall have a preference. We see no error in refusing this charge.
Alleged Error in Excluding Testimony.
On page 148 of the record the Court sustained an objection of counsel for plaintiff to a question addressed to the understanding of the defendant as to what was a proper “stop”, the Court stating on page 149, “The objection is sustained as to what he means in the statement by a ‘proper stop’.” After the explanation of the defendant was refused his counsel stated, at the bottom of page 149,
“The witness would testify, if permitted to answer, that he was bringing his car gradually to a stop which was to be made at the curb line on First Street extended across Perry Street; that he had almost stopped there and because of that he ivas able to bring his car to a very quick stop, because he was almost stopped when he hit the man.”
The defendant thereupon proffered evidence as to what he considered to be a proper stop. If his statement of the law or fact is not correct as disclosed in the proffer, then his proffer of testimony is of no avail, and its refusal is not error, 'for whatever reason the Court may give for its rejection. His-proffer must support his right to introduce the testimony, which had been refused by the Court. The proffer is merely to the Effect that he was gradually bringing his car to a stop at the curb line on First Street, where he had almost stopped, and that he was able to bring his car to a very quick stop because he had almost stopped when he hit the man. He had no right to proceed to a point of stopping at the curb line on First Street extended across Perry Street. The pedestrians’ passageway was marked not along the curb line, but 16 feet south of the curb line extended. The defendant had no right to cross over this 16 feet dedicated to pedestrians’ travel and make his stop at the south cui’b line projected. That would be substantially 16 feet north of the stop plate fastened on the surface of the street along the south boundary of the pedestrian lane. Therefore, we are of the opinion. that the Court properly refused to permit the defendant to testify as his proffered testimony indicated that it was incompetent- and irrelevant.
Evidence of the witnesses’ view of the law is not competent, and the evidence sought was simply this and nothing more.
It is also assigned as prejudicial error in the refusal of the Court to permit Goetz to explain the circumstances under which he pleaded guilty, as claimed to be supported in the case of Clark, et al. v Irvin, 9 O.131, and in Hendricks v Fowler, 16 O. C. C. 597. On page 161 the defendant being interrogated as to a charge placed against him of improper driving, to which he pleaded guilty, was asked, *121 “That was the sole offense to which you entered your plea, of guilty; did you have a lawyer, Mr. Goetz, at that time?” The Court stated, “We are not going into the merits of the charge he plead guilty to. You can not explain the evidence in Police Court.” After this refusal to permit the defendant to explain the plea of guilty in Police Court a proffer was made at the bottom of page 162 to the effect that the witness, if allowed to testify, would say that he had at the time he entered his plea of guilty in Police Court no legal advice as to his obligation under the ordinance; that the police had informed him that it was his responsibility to stop his car at the stop button, and that he believed their statement to be a correct statement of the law and that he did (not) care to consume the time necessary to try that question in the court, nor to incur the expense of hiring legal counsel, and therefore on advice of the police officer he entered a plea of guilty.
It occurs to us that the police officer gave him very good advice and if any attorney had given him any different advice, the attorney would have been wrong. It was his responsibility to stop his car at the stop button this being the south marginal line of the intersecting street and he was cor■reet in so believing. Had the proffered testimony been permitted, it •would not have shown that the defendant improperly plead guilty, but that his plea of guilty was the only plea he could properly make. The Court refused to let him testify in explanation of his plea of guilty, but when the explanation was proffered it is readily discernible that it could not be of value to him as he had not been induced to plead guilty on false information, and that his testimony would not have been relevant.
Another very good reason for the exclusion of the evidence is that it involved a question of the witnesses’ view of the law. The trial court had the obligation of determining this question without the opinion of law expressed by the witness. Chamberlayne on Evidence, Sec. 1293 and Sec. 2325.
The assignment of error on this account will be overruled.
Alleged Error in Admitting Testimony.
It is alleged that the Court erred in admitting evidence as disclosed on page 89 of the record relating to the medical testimony, the objection being to the following question addressed to a doctor,
“Q. With your experience, will you say this man may have had this nucleous polyposis displacement?
A. It is possible that he did.”-
On a motion to strike the answer, the Court asked the witness, “Can you answer definitely?” to which the witness replied, “It can not be answered definitely.” Thereupon the Court overruled the motion to strike and the evidence was introduced. We will not discuss at length the reasons that lead us to believe that there is no error in the ruling of the Court in refusing to strike the answer to this question. This assignment of error overruled.
Counsel discusses at further length the admission of testimony of the physicians and especially the admission of a letter produced at the request of counsel for defendant, but not introduced by him, but later introduced by counsel for plaintiff. We do not deem that this matter constituted prejudicial error, and this assignment is overruled.
*122 ALLEGED ERROR AS TO CONTRIBUTORY NEGLIGENCE.
Another error urged is that the court erred in his general charge in reference to contributory negligence in not stating that if the evidence of contributory negligence was introduced as a part of the plaintiff’s case, the burden rested upon the plaintiff to introduce sufficient contradictory evidence to balance his own evidence of contributory negligence.
We do not detect that the plaintiff’s own evidence introduced the element of contributory negligence.
We find that the Court at the request of defendant gave three special charges before argument, the first relating to “assured clear distance ahead”. The Court charged that the statute applies only to those objects in the line of vision of the motorist within the assured clear distance ahead which are static or remain present long enough to be observed by the driver; that said requirement has no application to a person moving into the line of vision of a motorist so suddenly that in the exercise of ordinary care he has neither space nor opportunity to stop his car.
The second special charge given by the court at the request of the defendant was in reference to §6310-36 GC wherein it is provided that pedestrians should not step into or upon a public road or highway without looking in both directions to see what is approaching. The court stated,
“I charge you that if from all of the testimony and evidence you find that the plaintiff did not look for approaching traffic before stepping upon the intersection at Perry Street, the plaintiff is guilty of negligence. If you further find that such negligence of plaintiff contributed even in the slightest degree to the ensuing accident, plaintiff cannot recover under the facts in this case.”
In the third special charge given at request of defendant it was stated by the court,
“If you find from all of the evidence that the traffic light controlling westbound traffic on First Street at the intersection of Perry Street was not signalling favorable to westward traffic at the time plaintiff started to cross Perry Street, I charge you that by such act plaintiff violated the ordinance of the City of Dayton at said time and place in force, and that such act constituted negligence.
I further charge you that if such negligence contributed even in the slightest degree to the injuries subsequently sustained by plaintiff in the accident of which he complains he cannot recover.”
These two charges are charges in reference to any possible contributory negligence under the testimony and there being no other evidence tending to show contributory negligence, the charge states what would result from the plaintiff’s contributory negligence. This assignment is overruled.
ALLEGED ERROR IN GENERAL CHARGE.
Counsel for defendant complains of the action of the Court in the following language:
“The court also refused to give the jury any instructions as to the necessity of reasonable probability on' the question of future damages. * *”
There was no request for such special charge. In his general charge the Court said:
*123 “If your verdict is for the plaintiff you will award him such an amount of money as the proof tends to show he is justly and fairly entitled to receive, which should be compensation only, or such an amount as will make the plaintiff whole, not exceeding, however, the amount claimed in his amended petition. In arriving at this amount you may take into consideration the nature of his injuries, whether they are permanent or otherwise, and how they will affect him, if at all, any bodily pain, or suffering by him as the result thereof.”
The question is whether or not this charge of the Court is prejudicial error.
We find in O. Jur. Vol. 13, p. 112, §40, in substance this statement:
“Those injured by negligence are entitled to an allowance not only for pain and suffering already endured, and for expenses and liabilities incurred, * * *, and as to the amount of pain and suffering that may reasonably be expected in the future as a direct consequence of the injury.”
“* * * ip-^g piaintiff is limited to damages for those injuries which are reasonably certain to follow. The court in its charge to the jury must limit the recovery of prospective damages to those damages which the evidence shows to be reasonably certain. * * *”
On page 294 of the same volume, §184:
“The jury in assessing prospective damages should confine themselves to such damages as are reasonably certain to follow from the injury complained of; and they should be so limited by the court in its charge. A charge to the jury that they may consider as an element of damages the pain suffered resulting from such injury, and also such prospective damages, if any, as they may believe the plaintiff has sustained, or will sustain, is too broad.”
A number of eases are cited supporting this text. In Ottgen v Garey, 41 Oh Ap, 499, it is held:
“4. Prospective damages claimed from injury should be limited by the court in its charge to such as evidence shows are reasonably certain to result from injury.”
In Leopold, Appellee v Williams, Appellant, 54 Oh Ap, 549, it is held:
“6. The test of prospective damages from personal injuries is ‘reasonable certainty’ * *
In that case on page 545, appears a part of the charge of the court. The Court in commenting upon this charge states:
“As to after pain and suffering the charge applied the correct standard, and then, speaking of the injury, told the jury to consider, ‘the extent, if any, to which it may be permanent’. The use of the word ‘may’ here is unfortunate, for it suggests consideration of possible not ‘reasonably certain’ effects.”
The case of Pennsylvania Co. v Files, 65 Oh St, 403, is a leading case upon this point. It is held:
“2. Where prospective damages from an injury are claimed they should be limited by the court in its charge to such as may be reasonably certain to result from the injury.”
While the court in the case at bar does not specifically mention a *124 recovery for prospective damages, yet under it the jury was entitled to consider prospective damages. After the court had finished his charge he stated: “Is there anything' else, gentlemen?” To which Mr. Harlan, counsel for defendant replied, “Exceptions to the charge specifically and that part of the charge pertaining to the prospective damages”. We must arrive at the conclusion that the charge as given under the authorities .stated was erroneous, and the question’ remains as to whether or not under the facts above related it was prejudicial.
In the Pennsylvania case last above mentioned, the Court on page 407 states in substance:
“Again, the court instructed the jury on the subject of damages as follows: ‘You may consider as an element of damages the pain he has suffered, resulting from such injury and also such prospective damages, if any, as the jury may believe he has sustained or will sustain.’ This, we think, was too broad. The jury in assessing prospective damages should have been confined to such as were reasonably certain to follow from the injury complained of. This precise point seems from the record not to have been called to the attention of the court, otherwise than by excepting to what was said. It is possible that had it been done the court would have made the correction; so that if this were the only error we might not reverse the judgment.”
In Village v Root, 54 Ohio, 523:
“2. To constitute error under this provision of the statute (requested instructions), the record must affirmatively show that the court was requested to give such instruction before argument and that its refusal to do so was the subject of an exception.”
The Court states in concluding the opinion:
“It can not be inferred from this record that the intention of the trial judge was in any way called to the right conferred by the amended statute.”
This case may not directly bear upon the issues in the case at bar, but is worthy of consideration.
We are of the opinion that by the exception of counsel for the defendant “especially to that part of the charge pertaining to the prospective damages” counsel did not call the attention of the court to the precise point, and as observed in the Pennsylvania Co. case, it is possible that had this been done the Court would have made the correction. This assignment is overruled.
The next point urged is that the verdict was excessive. The jury allowed the full amount claimed in the petition in the sum of $15,-536.58. The man suffered a great deal as the direct result of the accident and since leaving the hospital has been a constant sufferer, compelled to use a body brace.
We have gone over the evidence in reference to the effect of this injury and can not escape the fact that while it may not be said to have been given as the result of passion and prejudice, that it still is excessive. We arrive at the conclusion that it is excessive to the amount of $4000.00. If plaintiff will accept $11,536.58 in lieu of the amount found by the jury, the judgment of the court will be affirmed. If, however, plaintiff refuses to accept this amount, the judgment will be reversed for the *125 reason that the verdict is excessive.
BARNES & HORNBECK, JJ, concur.