JOHNSON, APPELLEE, *v.* ENGLISH, APPELLANT.

(No. 8110—Decided February 8, 1966.)

*Mr. Russell H. Volkema* and *Mr. C. Harold Dragoo,* for appellee.

*Messrs. Dresbach, Crabbe, Newlon, Bilger, Brown & Jones, Mr. Wilbur W. Jones* and *Mr. Charles E. Brown,* for appellant.

SILBERT, J.   This is an appeal on questions of law from a verdict and judgment for plaintiff, appellee herein, hereinafter referred to as plaintiff, in the Franklin County Common Pleas Court.

The instant case arose out of an automobile accident which occurred on April 9, 1962.   At the time of the accident the defendant, Iva English, was driving south on Cleveland Avenue when she collided with the rear of an automobile driven by the plaintiff, Harry C. Johnson.   Plaintiff brought suit claiming to have sustained serious injuries as a result of this collision.

The errors assigned by the defendant are as follows:

1. The verdict is against the manifest weight of the evidence and is contrary to law.

2. The verdict was the result of passion and prejudice.

3. The trial court improperly admitted evidence calculated to arouse the passion and sympathy of the jury.

4. Misconduct, prejudicial to the defendant, occurred during the closing argument of plaintiff's counsel.

5. The trial court erred in refusing to permit questioning of the plaintiff on cross-examination concerning a probable motive for his failure to return to gainful employment.

6. The trial court erred to the prejudice of defendant in giving special instruction number 3.

7. The trial court improperly charged the jury on the burden of proof applicable to claimed future damages.

Defendant, appellant herein, contends in assignments of error numbers 2 and 3 that the evidence introduced at the very close of the trial by the plaintiff, to the effect that his wife was an epileptic and that they were forced to live in a small house trailer, resulted in a verdict which was influenced by passion and prejudice.   Although under the applicable Ohio precedents this contention may have some validity, *Maggio* v. *City of Cleveland* (1949), 151 Ohio St. 136, and *Hudock* v. *Youngstown Municipal Ry. Co.* (1956), 164 Ohio St. 493, whether the defendant

(the appellant here) may raise such issue in this appeal presents an entirely different question.

During the course of the cross-examination of the plaintiff, Harry Johnson, *counsel for defendant* asked the following questions:

"Q. Now, have you folks taken any vacation since this automobile accident? A. Yes, sir, we go to her home quite often.

"Q. Where is that? A. That's in Logan County, down in West Virginia. We have spent a lot of time down there.

"Q. Where else have you gone? A. I have been to some of her folks in Akron about one hundred and some—maybe 110 or 115 miles north.

"Q. Do you do the driving? A. Yes, sir, I'm the only driver in our family.

"Q. Do you make a trip to Canada? A. Yes, sir.

"Q. How long were you up in Canada? A. I was in Canada about—around 40 days recently this past summer.

"Q. At the time you left, had you contemplated making a trip to Alaska, too? A. No, sir.

"Q. You hadn't discussed that with some of your friends? A. Not to Alaska.

"Q. You didn't? A. No, sir.

"Q. Did you fish up in Canada? A. Yes, sir.

"Q. You were gone about 40 days up there? A. I was gone longer than that but we were up there about 40 days. We stopped and rested quite a bit and took it easy, and thus the length of the stay, we couldn't travel too much a day and—
"* * *

"Q. Well, how did you go to Canada? A. In the Greenbriar—the Greenbriar has a seat more comfortable to—"

At the close of the defendant's case, counsel for the plaintiff recalled Harry Johnson. The relevant portion of the record is as follows:

DIRECT EXAMINATION:

"By Mr. Volkema [plaintiff's counsel]:
"* * *

"Q. Mr. Johnson, you were interrogated by the defense counsel and you were inquired of about whether or not you made a trip to Canada. Can you tell us why you went to Canada?

"Mr. Jones [defense counsel]: I object. This surely is not rebuttal.

"Mr. Brown [defense counsel]: This came out in the plaintiff's case.

"Mr. Jones: Came up in the plaintiff's case. We have not put the defendant on in the defendant's case, your Honor.

"Mr. Brown: Rebuttal, if the court please, is properly permitted as to matters brought up in the defense case. Now, if Mr. Johnson had something to say on direct examination after Mr. Jones had him, that was the time to say it, not after he'd had a chance to go over it with his counsel.

"Mr. Volkema: Well, then, if the court please, we move that we might introduce some additional evidence in our case. The court has this discretion.

"Mr. Brown: If it's proper, certainly.

"The Court: If you keep this short, I'll overrule the objection.

"Mr. Brown: Note our exception.

"Q. [By Mr. Volkema]: Now, Mr. Johnson, why did you go to Canada?

"* * *

"Q. Well, that's all right, Harry. Then you had the accident, then what happened and why? A. Well, I had the accident, I had to cancel all of these plans and couldn't go ahead building the house for obvious reasons, I wasn't able to work myself and it looked like after a while I didn't know what, so I just didn't want to take the chance on walking in the dark, so to speak. I might inject this, too, that my wife isn't in good health. She is an epileptic and she suffers seizures occasionally, sometimes more, sometimes less, but she does have these seizures.

"Q. All right, and what were you living in at that time after the accident, right after the accident? A. I was living in a house trailer.

"Q. All right. A. And—

"Q. And why did you go to Canada? A. Well, the close confinement in this trailer, me getting out of the hospital and couldn't get out and move around as much as we like to, Betty and I had both been active and she felt obligated to stay with

me, she gave up her holding because I had to give up mine, we were just sitting there with four walls crowding in on us all the time and frankly I knew it was driving her half crazy, she was having more frequent seizures, and it was about to drive me out of my mind, too. * * *''

Interpreting the defendant's objection in the light most favorable to her then, there were actually two underlying reasons for it. The first would be an objection to improper rebuttal. As a result of this objection, the plaintiff then moved to reopen the case and to introduce additional evidence. Giving the defendant the benefit of the doubt, we might say that she also objected to the reopening of testimony by the plaintiff. However, it is unquestionably within the court's discretion to allow the case to be reopened. Therefore, this objection would have been properly overruled. Consequently, defendant's objections were:

1. an objection to improper rebuttal;
2. an objection to reopening the case.

These are specific objections and the applicable rules are clear.

The general rule regarding specific objections is that one who has made specific objections to the admission of evidence thereby waives all other objections and cannot assert such others in the appellate court. *Kent* v. *State* (1884), 42 Ohio St. 426, 430; 3 Ohio Jurisprudence 2d 63, 65, Appellate Review, Section 203; 4 Jones on Evidence (5th Ed. 1958) 1837, Section 976; I Wigmore on Evidence (3rd Ed. 1940) 339, Section 18. As applied to the instant case, the defendant specifically objected on the grounds of ''improper rebuttal.'' Therefore, on appeal, she may not change her grounds to ''prejudicial and improper testimony * * *.''

Under our analysis, the question, ''why did you go to Canada?,'' was a proper question as its purpose was to refute certain inferences made by the defense counsel during his cross-examination of the plaintiff. Although this question was objected to, the objection was correctly overruled, as it is manifestly within the discretion of the trial court to allow the case to be reopened. However, although the question was proper, the answer was improper as it was not responsive and inter-

jected the prejudicial material. In this context, 3 Ohio Jurisprudence 2d 70, Appellate Review, Section 206, states:

"An objection to a question put to a witness and an exception to the overruling of such objection is not sufficient to raise the question of error in admitting or letting stand an improper answer, if the question itself was proper. There must be a motion to strike out the answer, or the question of its competency must be raised in some other manner in the trial court to make the question of competency available on review. [See *Megginson* v. *Bilan* (1931), 40 Ohio App. 210.] In such a case, counsel should make specific reference to the incompetent evidence, and move that it be excluded."

4 Jones on Evidence (5th Ed. 1958) 1841, Section 979, states:

"The remedy by way of a motion to strike out the objectionable testimony may be availed of by the aggrieved party where the answer of a witness is not responsive to an unobjectionable question or where a witness has volunteered statements in such a way that the party has not been able to object thereto. * * * if the motion is not promptly made, it may be concluded that the right has been waived."

See, also: I Wigmore on Evidence (3rd Ed. 1940) 344, Section 18.

In the instant case, the prejudicial material should have been made the subject of a motion to strike. As the question was proper, the only way in which to lay a foundation for appeal was to make such a motion. As this was not done, the defendant is precluded from raising this question at this time.

In assignment of error number 6, the defendant alleges that the trial court committed prejudicial error by reading plaintiff's special instruction number 3 to the jury. However, *nowhere* in the record did the defendant specifically object to this special instruction. This issue was never raised until the defendant filed her brief in support of a motion for a new trial. In *Wheeler* v. *Smidt* (1957), 105 Ohio App. 550, the Court of Appeals stated, at page 553:

"We have no difficulty in disposing of the other contention of the defendants in regard to the trial court's improperly giv-

ing a special written instruction before argument as requested by the plaintiff. The record does not disclose any objection to the court's giving this instruction. In *Kennard, a Minor,* v. *Palmer, a Minor,* 143 Ohio St. 1, 53 N. E. 2d 908, at page 6 of the opinion, Judge Zimmerman said: 'If a party believes a tendered instruction does not contain a correct or applicable statement of the law, he should note an objection in order to predicate error upon the giving of such instruction. Section 11560, General Code.' This statute has been succeeded by Section 2321.03, Revised Code, which contains the same language as the former section. See, also, *Blake* v. *Hansley,* 66 Ohio Law Abs. 294, 116 N. E. 2d 827. The provision of this statute, dispensing with exceptions to the court's general instructions, does not apply to a special instruction requested by a party. In the absence of such objection or exception, as in the instant case, the question is not subject to review."

Consequently, under Ohio law, the defendant is precluded from raising the question of the validity of special instruction number 3 on this appeal.

In assignment of error number 7, the defendant alleges that the trial court improperly charged the jury on the burden of proof applicable to claimed future damages. The portion of the trial court's charge claimed to be erroneous is as follows:

"Plaintiff in this case is entitled to an amount of money which would fairly and reasonably compensate him for the actual injury and loss proximately caused by the negligence of the defendant.

"In determining this amount, you would take into consideration the nature and the extent of the injuries, the effect upon his physical health, the pain that he suffered, the ability or inability to perform usual activities, the time and the loss of income suffered, the reasonable cost of necessary medical and hospital expenses incurred; you should also consider the alleged damages to personal property of the plaintiff from the evidence and determine their amount. From the evidence and supported by medical testimony, you would consider the matter of alleged permanent injury to the plaintiff as a direct and proximate result of the negligence of the defendant. *You will*

*consider evidence as to future expenses and pain which the evidence shows to you to be probable as the result of such negligence of the defendant.''* (Emphasis added.)

The defendant alleges that the italicized portion of the charge ''* * * constitutes a gross error since it is directly contrary to the well-established Ohio law on this subject * * * [which requires that] * * * before future items of damage may be recovered, it must be proved to a reasonable degree of certainty that they will result * * *.'' However, to determine exactly what is the law on this subject requires a close analysis of the applicable cases and background.

In the United States there are basically two rules concerning the degree of proof required to recover future damages. However, the dividing line between them is often hazy, and much overlapping occurs. Some jurisdictions have adopted the rule that damages may be recovered only for such future expenses as it is reasonably certain will result from the injury received. This is known as the ''reasonable certainty'' rule. (See Annotation, 81 A. L. R. 423 [1932], wherein 26 jurisdictions are listed as following this rule.) In other jurisdictions the courts have refused to adopt the ''reasonable certainty'' rule and have held that if the jury is confined to a consideration of only such future expenses as are ''reasonably probable'' to result from the injury this is a sufficient safeguard against speculation and conjecture on the part of the jury. See Annotation, 81 A. L. R. 423 (1932).

The majority of courts follow the ''reasonable certainty'' rule, and it is the standard that has been adopted in Ohio. However, with regard to the correctness of instructions submitting this rule to the jury, the various states and courts within a state occasionally differ. Some states have held that the words, ''reasonably certain,'' or, ''reasonable certainty,'' should be used in giving instructions to the jury on the subject, while others have held that similar expressions which sufficiently prohibit speculation and conjecture on the part of the jury meet the requirements of the rule. Furthermore, the rule is complicated by the question of whether a slight variance in the wording of the jury instruction will constitute prejudicial error or only error.

In Ohio the cases have occasionally varied, and close analy-

sis of these precedents is required. However, in the recent case of *Knotts* v. *Valocchi* (1963), 2 Ohio App. 2d 188, 193, these precedents have been thoroughly reviewed and analyzed, and, therefore, we will not reiterate that discussion here. Suffice it to say that the rationale of these cases is as follows: Reasonable certainty is the standard. However, this nomenclature is not absolute. Use of other words, *e. g.*, "may," "as will continue," etc., may be error, but it is usually not prejudicial error unless the total charge imposed no standard whatsoever or if the standard imposed allows the jury to conjecture or speculate regarding future damages. Therefore, there will only be a reversal if the words used constitute prejudicial error (as defined above) or if there are other prejudicial errors in the record. See: *Pennsylvania Co.* v. *Files* (1901), 65 Ohio St. 403; *Cincinnati Traction Co.* v. *Riskey* (1913), 22 C. C. (N. S.) 301, 33 C. D. 578; *Community Traction Co.* v. *Sear* (1926), 21 Ohio App. 282; *Martin* v. *Cincinnati Street Ry. Co.* (1938), 61 Ohio App. 375; *Knotts* v. *Valocchi* (1963), 2 Ohio App. 2d 188, 193. But see: *Toledo Rys. & Light Co.* v. *Prus* (1917), 7 Ohio App. 412; *Ottgen* v. *Garey* (1932), 41 Ohio App. 499; *Leopold* v. *Williams* (1936), 54 Ohio App. 540; *Sayler* v. *Oyler Bros., Inc.* (1955), 72 Ohio Law Abs. 199.

It must be noted that in no prior Ohio case was the specific use of the word, "probable," passed upon by an appellate court. The only case in which "probable" is used is *Willaman* v. *Graber* (1936), 57 Ohio App. 39. That case deals with the effect of a special instruction submitted by the plaintiff which was read to the jury. Although the exact text of the instruction was not reproduced in the opinion, the court stated, at page 41:

"* * * Later in the request to charge, the jury was instructed that it could consider the *probable* effect of the injury in the future upon his health, the use of the injured knee and his ability to conduct his business. We believe this charge given to the jury at the request of the plaintiff was a sound and complete statement of the law." (Emphasis added.)

While this is not a conclusive determination of the use of the word, "probable," in Ohio, it does, however, indicate that this word imposes an acceptable standard and that its use does not constitute prejudicial error. See: *Pennsylvania Co.* v. *Files* (1901), 65 Ohio St. 403, 407.

Other states that follow the "reasonable certainty" rule have held that the use of the word, "probable," was not error. See: *Gallamore* v. *City of Olympia* (1904), 34 Wash. 379, 75 P. 978, 980; *Harris* v. *Brown's Bay Logging Co.* (1910), 57 Wash. 8, 106 P. 152. Furthermore, the phrase, "in all probability," has been upheld in states applying the "reasonable certainty" rule. See: *Coppinger* v. *Broderick* (1931), 37 Ariz. 473, 295 P. 780; *King* v. *Neller* (1924), 228 Mich. 15, 199 N. W. 674; *Welborn* v. *Metropolitan Street Ry. Co.* (1913), 170 Mo. App. 351, 156 S. W. 778.

A principal purpose of the "reasonable certainty" rule is to prevent the jury from speculating about future damages. In the instant case, the trial judge in another part of this charge made the following statements:

"Now, the court feels that one further matter should be made concerning damages on the matter of pain and suffering. The amount due a plaintiff in any case from evidence as to pain and suffering is a figure or an amount which you, the jury, must reasonably determine from the evidence. We cannot give you a specific yardstick that you can use in determining that factor, except the admonition that the amount in that factor should be reasonable under all the facts and the circumstances in evidence."

"* * * Ladies and gentlemen, in the event the court may have left one subject not fully covered, the court will on request give just one further admonition and that is as to the total compensation to be allowed to the plaintiff in this case. I direct you that we are considering compensation and compensation only, and we are considering evidence of damage which you, the jury, find to be proximately caused by the specific negligence of the defendant in this case. In that determination, you are not to speculate beyond the evidence which is before you in this case."

Although those quotes are not conclusive, when the charge is read *in toto*, the jury was sufficiently prevented from speculation on future damages.

Overemphasis on the use of specific words may be self-defeating. In McCormick on Damages (1st Ed., 1935) 318, Section 88, the author states:

"* * * Attempts by appellate courts to require that instructions about damages for pain and suffering conform to a standard of exactness appropriate only to a mathematical theorem are sometimes encountered. For example, the phraseology of instructions authorizing damages for future pain and suffering seems to assume importance in the minds of some appellate courts. Consequently, there is much discussion as to whether particular instructions properly limit damages to compensation for suffering reasonably certain to be sustained or erroneously permit recovery for suffering which is merely 'possible.' Surely too great exactitude about this subordinate feature of the instructions on damages should not be required. The chief reliance for reaching reasonable results in attempting to value suffering in terms of money must be the restraint and common sense of the jury and not the detailed verbal accuracy of the instruction."

The author goes on to note that, despite some of the narrow decisions in this field, the trend is to a more liberal attitude regarding these instructions.

In *Knotts* v. *Valocchi* (1963), 2 Ohio App. 2d 188, 193, the Court of Appeals for Lake County when dealing with the same problem as in the instant case stated:

"We have dealt with various language at length, not out of inclination for tautology but from appellant's relentless insistence on *reasonable certainty*, 'the phrase, the whole phrase and nothing but the phrase' in imitation of the witness' oath, and because of his apparent belief that once certain words in certain combinations are used in appellate court opinions, those words, and *only those words*, will be acceptable in a jury instruction. As a result of this belief, shared by many, special instructions, and even the general charges, of trial courts have frequently become the reading of successive paragraphs of selected and unrelated, but appeal tested, abstract propositions of law, not particularly applicable to the facts developed on trial; and the art of instructing a jury in language that is understandable and meaningful to it is in danger of being lost. It is already increasingly said among trial judges that 'charges are delivered to satisfy the Court of Appeals, not to instruct the jury.'

"We think that it is far more important that a special instruction, as well as the general charge, be couched in plain, understandable and informative language than that it contain every code word or phrase which has, at some remote time, been judicially approved."

Consequently, on the basis of the above cases, we conclude and therefore hold that, although the use of the word, "probable," was not the best possible choice, the jury was sufficiently limited in awarding future damages, and, therefore, no prejudicial error was committed by the trial court in its charge.

One further point remains to be noted. At the close of the court's charge to the jury, the defendant made only a general objection and did not specifically point out the court's failure to use the phrase, "reasonably certain." In *Hansen* v. *Goetz* (Montgomery County Court of Appeals, 1942), 37 Ohio Law Abs. 112, the appellate court, in reviewing a jury charge on the question of the standard for prospective damages, characterized the failure to include the phrase, "reasonable certainty," as an error of omission. Although the court stated that the charge was erroneous, the court held that since the appellant had only voiced a general objection, any error committed by the trial court regarding this standard was not a prejudicial error warranting a reversal. As the syllabus in *Rhoades* v. *City of Cleveland* (1952), 157 Ohio St. 107, states:

"Where claimed errors in the charge of the court are errors of omission and not errors of commission, unless counsel has requested the court to supply the omissions, such errors of omission will not ordinarily justify a reversal."

See, also: *Oberlin* v. *Friedman* (1965), 5 Ohio St. 2d 1, 3. Consequently, as the defendant in the instant case did not specially object to the court's charge or request the inclusion of the phrase, "reasonably certain," in the charge, she stands in exactly the same position as the appellant in *Hansen* v. *Goetz* (1942), 37 Ohio Law Abs. 112.

Therefore, conceding that it would have been more correct for the trial court to have used the phrase, "reasonable certainty," the use of the word, "probable," when read in conjunction with the rest of the court's charge imposed a sufficient standard under Ohio law to preclude the jury from speculation

on future damages. Furthermore, as the defendant made only a general objection to the court's charge, under the rule of *Hansen* v. *Goetz* (1942), 37 Ohio Law Abs. 112, if error was committed, it was not prejudicial.

The defendant, in assignment of error number 1, alleges that the verdict is against the manifest weight of the evidence and is contrary to law. However, after a close and thorough reading of the record of this case, we have determined, and, therefore, hold, that the verdict is adequately supported by the evidence presented at the trial.

The defendant further contends, in assignment of error number 4, that it was error for the trial court to allow plaintiff's counsel to suggest, for purpose of argument, a rough percentage figure indicating the degree of disability suffered by the plaintiff. Although we do not condone the type of statement made by plaintiff's counsel in his final argument to the jury, we are convinced that, when the statement is read in context, it is clear that it was within the permissible scope of argument and no prejudicial error was committed thereby.

Finally, defendant alleges, in assignment of error number 5, that the trial court erred in refusing to permit questioning of the plaintiff on cross-examination concerning whether he had a source of income since the accident. The trial court sustained an objection to this line of questioning on the basis of the collateral income rule. See: 1 Jones on Evidence (3rd Ed. 1940) 328, Section 188. Defendant now contends that the purpose of this question was to determine a probable motive for plaintiff's failure to return to work. However, we find no merit whatever in this contention and, therefore, are unable to accept defendant's theory in this matter.

Therefore, on the basis of the cases hereinabove cited, the judgment of the Common Pleas Court is affirmed.

*Judgment affirmed.*

SHERER, P. J., and CORRIGAN, J., concur.

SHERER, P. J., of the Second Appellate District, and SILBERT and CORRIGAN, JJ., of the Eighth Appellate District, sitting by designation in the Tenth Appellate District.