[No. 8307.  Department One.  January 17, 1910.]

## CHARLES HARRIS, *Respondent*, v. BROWN'S BAY LOGGING COMPANY, *Appellant*.[1]

RAILROADS—OBSTRUCTIONS NEAR TRACK—NEGLIGENCE—EVIDENCE—SUFFICIENCY.  It is actionable negligence to knowingly leave a skid, used for loading a donkey engine, so near the tracks of a logging railway that it was liable to be struck by a train of logs passing while men were working at the place and liable to be struck by the skid.

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE — APPARENT DANGERS—QUESTION FOR JURY.  A section hand is not guilty of contributory negligence, as a matter of law, and does not have equal knowledge with the company as to the liability of a train of cars to strike a skid used to load a donkey engine and left near the track, where he testified that he did not know of the fact, he had worked for the company but a few hours, and knew nothing of the manner in which logs were loaded on the cars, while the foreman knew that it was liable to be struck by logs, although the engine could pass in safety.

MASTER AND SERVANT—SAFE PLACE—DUTY OF MASTER—INSTRUCTIONS.  An instruction that the master owes the "positive" duty to provide its employees with a reasonably safe place to work is not objectionable as making the master an insurer.

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—OBVIOUS DANGERS—INSTRUCTIONS.  Where the contributory negligence of a new section hand depended upon whether he had knowledge or might have known that a skid near the track was liable to be struck by a passing logging train, a fact known to the company, it is within the issues and proper to give an instruction as to the duties of the parties where they do not stand upon an equal footing as to the obvious or apparent dangers.

SAME—TRIAL—REQUEST FOR INSTRUCTIONS.  An objection that an instruction as to the duties of a master where he and the servant do not stand upon an equal footing is misleading in not further instructing that there can be no recovery if both are equally ignorant of a danger, can only be made where there was a request for the further instruction.

DAMAGES—FUTURE PAIN AND SUFFERING.  An instruction authorizing a recovery for such suffering and pain as the jury think prob-

[1]Reported in 106 Pac. 152.

able from the testimony he would experience in the future, is not erroneous as failing to limit the recovery thereof to the damages which it is reasonably certain he will suffer.

TRIAL—INSTRUCTIONS—REQUESTS. It is not error to refuse to give requested instructions covered in the general charge.

Appeal from a judgment of the superior court for King county, Ronald, J., entered June 15, 1909, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a section hand on a logging railroad. Affirmed.

*Blattner & Heasty, L. F. Chester,* and *L. B. da Ponte,* for appellant.

*R. B. Brown* (*Allan Brant,* of counsel), for respondent.

FULLERTON, J.—The respondent brought this action against the appellant for personal injuries. He had a verdict and judgment in the court below, and this appeal is taken therefrom.

The record discloses that the appellant is engaged in the logging business, and as a part of its equipment owns and operates a logging railway. On April 5, 1908, it employed the respondent to work on its railway as a section hand, instructing him to perform such work as he should be directed to perform by the section foreman. He was put to work by the foreman on the day of the accident shoveling the accumulated dirt and debris from a place on the track in front of an abandoned landing, the purpose being to clear the space around the ties at that point so that the track could be moved and thus straightened. While he was so at work a locomotive with a car attached came over the track to the landing for the purpose of carrying away a donkey engine which stood or was shortly thereafter brought to the foot of the landing. To facilitate loading the donkey engine, two skids were laid on the landing at right angles to the track, parallel to each other, and some eighteen or twenty feet apart. They were about thirty feet in length and so placed

that the ends next the track protruded beyond the landing to within a few inches of the edge of the car.   The donkey engine was then hauled or "skidded" along the skids onto the car.   After loading, the engine pulled away, leaving the skids as they were originally placed.   The respondent and his companions then resumed work in front of the landing until the noon hour, when they went to dinner.   Coming back from dinner, they resumed work at the same place, and while so at work a warning was given of the approach of a train loaded with logs, and the respondent, with others of the crew, climbed up onto the landing to escape the train, he taking a position between the skids some fifteen feet back from the track, and within four or five feet from the skid farthest away from the approaching train, where he turned and stood looking at the train as it was passing.   On one of the trucks, possibly the third one from the engine, a log was left projecting over the edge of the truck.   This log struck the skid near which the respondent was standing, throwing the end struck forward and the other end backward.   The end as it was thrown backward struck the respondent, crushing his leg.

The appellant first contends that no actionable negligence on its part is shown, but we think this contention hardly tenable.   The negligence consisted in placing the skids so near the track that they could be struck by a passing train, putting the respondent to work on the track in front of them, and then running a train down upon him, knowing that he was liable to move between the skids in getting out of the way of the train, without warning him of the danger of so doing.   The accident was not what the law calls an unforeseen accident.   On the contrary, the testimony of the appellant's foreman makes it clear that he foresaw the possibility of a log on the train striking the skids.   In fact, he testifies that he saw that the skids were far enough back to allow the engine to clear, and anticipated no trouble from a log striking them, as they would merely be pushed out of the way without danger of derailing the train or causing it to lose

its load of logs.   Since, therefore, the appellant knew the skids were liable to be struck by a train loaded with logs, it was bound to anticipate danger to its employees if they stood between or near the skids when a trainload of logs was passing, and the accident was one that could have been foreseen by the exercise of ordinary care, rather than incapable of being foreseen.

As its second ground of error, the appellant contends that the respondent had equal knowledge with the appellant of the existence of the danger to which he exposed himself, and consequently took the risk of injury upon himself.   But the premise here assumed is contrary to the facts, as we read the record.   It is true that the respondent had the opportunity of knowing, and could have known, had he looked, how far the skids projected beyond the edge of the abandoned landing, but whether he knew or ought to have known that the loaded cars were likely to strike them is a disputed question in the record.   He himself says that he did not know they were likely to be struck, and the record does not make the contrary so apparent that the court is required to say, as a matter of law, that he should have known.   He had worked for the appellant only a few hours before the accident, and, so far as it appears, knew nothing of the manner in which the logs were loaded on the cars, or how far they would be likely to project beyond the edge of the car trucks.   At best, therefore, the question whether the respondent was guilty of contributory negligence in standing in the place he did stand, was for the jury.

To sustain this contention, the appellant cites and quotes largely from the case of *Anderson v. Inland Telephone etc. Co.*, 19 Wash. 575, 53 Pac. 657, 41 L. R. A. 410, but the cases are not parallel.   In that case an employee of the telephone company was injured by coming in contact with a guy wire which formed a part of the equipment of an electric railway company operating an electric railway along the street on which the telephone company's wires were stretched.   The

guy wire had become charged with electricity from the railway company's operating wire through a defective insulator. The injured employee was himself an electrician, or at least knew the hazards of the business in which he was engaged, and was provided with instruments for detecting stray currents, by the use of which he was expected to look out for his own safety. It was properly held on these facts that, as between himself and his employer, the servant assumed the risk of injury from stray currents of electricity. But in the case at bar, the burden was not on the respondent to look out for the safety of the place in which he was required to work. This duty was on the appellant, and when the respondent took a place beside the track, safe from any injury likely to be received from the passing train, he had a right to rely on the presumption that the place in which he stood was safe from dangers of which he knew nothing, and of which no warning had been given him. The distinction between the cases lies in the fact that in the one case the injury did not arise from the fault of the master, while in the other the injury was the direct result of such fault.

The court charged the jury that "the master owes the positive duty to an employee to provide him with a reasonably safe place in which to work, so far as the nature of the work undertaken and the exigencies of the case will permit the same to be made reasonably safe . . ." The objection is to the word positive. It is said that it in effect makes the master an insurer of the safety of the place, while the rule is that the master is only required to exercise reasonable care and diligence in his performance of this duty. But we think the appellant has given the word a meaning it does not have in the connection in which it is here used. It will be noticed that the adjective qualifies the noun "duty," and is used rather as the antithesis of the word "delegable," than as a measure of the diligence required of a master in his effort to comply with the requirements of the rule—it being meant to assert that the master could not relieve himself of liability for the non-

performance of the duty of furnishing his servant with a safe place in which to work by delegating that duty to another. But, however this may be, that this is a correct statement of the rule has been repeatedly announced by this court. *McDonough v. Great Northern R. Co.*, 15 Wash. 244, 46 Pac. 334; *Ogle v. Jones*, 16 Wash. 319, 47 Pac. 747; *Shannon v. Consolidated Tiger & Poorman Min. Co.*, 24 Wash. 119, 64 Pac. 169; *Green v. Western American Co.*, 30 Wash. 87, 70 Pac. 310; *Czarecki v. Seattle & S. F. R. & Nav. Co.*, 30 Wash. 288, 70 Pac. 750; *Mullin v. Northern Pac. R. Co.*, 38 Wash. 550, 80 Pac. 814. The rule is also stated in this form in 26 Cyc. 1104. There was therefore no error in the instruction.

The court further charged the jury as follows:

"When the parties do not stand upon an equal footing; that is, where the danger of the place is not obvious and apparent to the servant, or, by the exercise of ordinary care and prudence on his part, would not have become apparent, then the servant has a right to assume that the master has furnished him with a safe place in which to work. But where the dangers incident to the employment are alike open and obvious to the master and servant, or, by the exercise of ordinary care and prudence could have been seen and noticed by the servant, then the parties are upon an equality, and the servant assumes the risk, and the master is not liable for the injury to the servant resulting therefrom."

It is objected to this instruction that it submits an issue not raised by the evidence, and is misleading because it fails to inform the jury that there can be no recovery where both master and servant are equally ignorant of the defects or dangers causing the injury to the servant. Neither of these objections are tenable. As we read the record, one of the principal questions at issue was whether or not the dangers of the place in which the respondent stood was as apparent to him as it was to his employer, and, this being so, it was, of course, proper to give the jury an instruction upon the question. That the instruction given correctly states the law,

there can be no doubt.    The second objection misconceives the rule.    An instruction, correct as far as it goes, is not erroneous because too general in its terms, or because it omits matters that might properly be connected with it.    The remedy in instances of this kind is to request a more complete or specific instruction.

"The rule as to nondirection is altogether different from that just stated [misdirection] ; for while it is the duty of the court to give instructions requested which are correctly drawn and applicable, and which are seasonably presented, it is a general rule in both civil and criminal cases, . . . that mere nondirection, in the absence of request, does not constitute error."    11 Ency. Plead. & Prac., 217.

See, also, *Duteau v. Seattle Elec. Co.*, 45 Wash. 418, 88 Pac. 755.

The court also charged the jury as follows:

"Now, gentlemen, if you find in favor of the plaintiff you will assess such damages, as in your judgment, will actually compensate him for his impaired earning capacity, his suffering and pain which he has undergone, and which you think probable from the testimony he will experience in the future, not exceeding $7,500."

The objection to this instruction that it permits the jury to indulge in speculation and conjecture as to the damages the respondent may suffer in the future on account of pain and diminished earning capacity, whereas the true rule is that he can only recover such damages as it is reasonably certain he will suffer in the future by reason of pain and diminished earning capacity.    The case of *Ongaro v. Twohy*, 49 Wash. 93, 94 Pac. 916, is cited as maintaining this contention.    In that case we did hold that it was reversible error to instruct the jury that the plaintiff can recover for such pain and suffering as the jury should find "he may suffer in future" because of his injuries, saying that the true rule is the rule the appellant contends for in this case.    But we did not mean by the holding in that case that no other form of expression than the one there used could correctly convey to the jury the idea

intended to be conveyed. This is evidenced by the fact that the cases of *Gallamore v. Olympia*, 34 Wash. 379, 75 Pac. 978, and *Kirkham v. Wheeler-Osgood Co.*, 39 Wash. 415, 81 Pac. 869, were cited and distinguished from the case then at bar on the ground that the modifying language of the instructions in these cases were sufficient to bring the instructions within the rule. In the first of these cases the instruction was in almost the exact language of the instruction in the case at bar, and it was held, on both reason and authority, that the instruction satisfied the rule. In the second case the language used was that the jury in awarding damages to the plaintiff "might take into account the pain and suffering the respondent had endured and may endure as the ordinary and actual result, and as a consequence of the injury sustained." The language of the instruction complained of in the case at bar is as definite as the language used in the instruction in these cases, and we hold it free from error.

Certain instructions were requested by the appellant which we do not find necessary to notice specifically. In so far as they were material, they were substantially included in the charge of the court. This was sufficient. In this state it is not error to refuse to give verbatim a requested instruction, even though the instruction requested may be pertinent and couched in proper language; it is sufficient for the court to give the request in substance.

The judgment is affirmed.

RUDKIN, C. J., CHADWICK, GOSE, and MORRIS, JJ., concur.