[No. 9290.    Department Two.    February 7, 1911.]

·J. P. JACOBSEN, *Respondent*, v. HENRY ROTHSCHILD *et al.*,
*Appellants.*[1]

MASTER AND SERVANT—FELLOW SERVANTS — SIGNALS — PRESUMP-
TIONS—EVIDENCE—SUFFICIENCY. Where a winch tender testified that
he "let go" a sling load of ties in obedience to an order from the
foreman in charge of the work, the presumption that the signal was
given by the hatch tender is overcome, and the finding of the jury
to that effect controls, although the foreman denied that he gave
the signal.

SAME—FELLOW SERVANTS—WHO ARE—SIGNALMAN AND FOREMAN.
Where workmen are compelled to depend upon signals, the master's
duty of conveying the signals is nondelegable, so that a hatch tender
giving signals would not be a fellow servant of the foreman of the
crew.

MASTER AND SERVANT—DEFECTIVE APPLIANCES—EVIDENCE—SUFFI-
CIENCY. Where an injury resulted to a stevedore through the in-
ability of the winch driver to make the winch obey the lever, testi-
mony by the winch driver that he told the foreman that the winch
was defective, whereupon he was directed to do the best he could
with it, is sufficient to warrant the submission to the jury of an
issue as to the defective condition of the winch.

MASTER AND SERVANT—SAFE PLACE TO WORK—INSTRUCTIONS. It is
not reversible error to instruct that the master owes the duty to
furnish his servant with a safe place to work, instead of instructing
that he must exercise ordinary care in furnishing a safe place,
where the instruction is qualified by another to the effect that the
master is not an insurer of the safety of the place, but that the law
imposes upon him the duty of exercising a reasonable degree of
care in the furnishing of a safe place.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for
$1,500 for the loss by a stevedore of two toes, is not so excessive as
to warrant the supreme court in setting it aside, where it appears
that the plaintiff lost two months' time, during which he suffered
great pain, and it is impossible for him to bear the full measure of
his former burden in the same class of work.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered June 13, 1910, upon the ver-
dict of a jury rendered in favor of the plaintiff, in an action

[1] Reported in 113 Pac. 261.

for personal injuries sustained by a stevedore in loading a vessel. Affirmed.

*Trumbull & Trumbull,* for appellants.

*Heber McHugh* and *John T. Casey,* for respondent.

CHADWICK, J.—Plaintiff Jacobsen was employed as a side runner in a stevedoring crew, engaged in loading a vessel at Eagle Harbor, in this state, on the 18th day of September, 1909. The vessel was being loaded with railroad ties, and the work had so far progressed that the hold was filled on each side of the hatchway, leaving a space the size of the hatchway and about ten feet deep to be filled. Ties were brought to the ship on a raft, and were carried in loads, varying from seventeen to twenty-four ties, to a point over the open hatchway by a derrick operated by a winchman. The load was then taken by another winch and lowered into the hold. Two crews were working in stowing away ties, one on each side of the ship. Plaintiff had charge of one of the crews. A sling load of ties had been lowered into the hold, where they were to be released from the sling. It was customary to land the load on cross-ties so that, when the rigging was released, the sling could be carried up by the tackle. When this particular load had been brought to within eighteen inches of the cross-ties, the winch stuck. Plaintiff, whose duty it was to give orders from the hold, called to the hatch tender, who was signalman, to "come back." This meant that the load should be allowed to come down slowly, so that the men could control its resting place by means of picaroons, the crew being divided and two being at either end of the load, the testimony showing that, because of the stanchions and the stowed-away ties, it would have been inconvenient, if not impossible, to control the load by standing at the side of the load, unless the employees stood amidships, which the testimony shows was seldom if ever done by the crew for the reason that it would probably have been impossible on ac-

count of the working of the crew engaged on the opposite side of the ship.

The testimony of the winchman is that the hatch tender called to him two or three times to let the load "come back;" that he made several efforts to lower the load, but that the winch refused to obey the lever, when a Mr. Pierson, who was the foreman in charge for the defendants, called to him to "let go," which was a signal meaning to drop the load. This he did in obedience to the order of the general foreman. The load dropping suddenly could not be controlled by the men below, and dropped on one of the cross-ties in such a way that it was inclined and some of the ties from the middle of the load slid out, one of them striking plaintiff on the foot and mashing off his great toe, and so injuring the second toe that it, too, had to be amputated within about a month from the time of the injury. A verdict for $1,500 was rendered in favor of the plaintiff, and from a judgment upon the verdict, defendant has appealed.

The principal reliance, or rather the first question to be disposed of, is the contention of appellant that the hatch tender and respondent were fellow servants. Respondent argues this proposition from two premises, one of fact and the other of law. The assumption of fact is that the foreman, Mr. Pierson, did not give the signal to the winchman to "let go," but that the signal was given by the hatch tender. It is true that Mr. Pierson denies, in a way, that he gave this signal. His testimony is not as positive as it might be, and when considered in the light of the positive testimony of the winchman that he did give the signal, and the testimony of Pierson that he was in such control of the men employed on the ship that he expected all of his orders to be obeyed, we think the assumption of fact made by respondent should be disregarded and the finding of the jury should control. But assuming that respondent is right in his contention that the signal was given by the hatch tender or signalman, it does not follow

5—62 WASH.

that respondents are relieved of their liability under the doctrine of fellow servant. Respondent and the hatch tender were not working together in such a way as to make them fellow servants. Nor was respondent in a position where he could have protected himself against the negligence of his co-laborer or, as was said in *Jock v. Columbia & Puget Sound R. Co.*, 53 Wash. 437, 102 Pac. 405, "he could see clear around the whole transaction." The rule has been frequently announced by this court that it is not the rank of the servant but the character of the act which determines the relation of co-employees. *Jackson v. Danaher Lumber Co.*, 53 Wash. 596, 102 Pac. 416, and cases there cited.

It has been as frequently announced that, in the work of loading a ship where one workman is compelled to depend upon signals passed by another workman to the one in control of the movement of the cables and slings, the one conveying the signals to the winch driver is performing the duty of the master, a duty that is not delegable under the law, and that the rule of fellow servant does not apply. It was so held in *Westerlund v. Rothschild*, 53 Wash. 626, 102 Pac. 765; *Anderson v. Globe Nav. Co.*, 57 Wash. 502, 107 Pac. 376, and *Norman v. Shipowners Stevedoring Co.*, 59 Wash. 244, 109 Pac. 1012; and the same rule was followed in a case involving the like principle in *Engelking v. Spokane*, 59 Wash. 446, 110 Pac. 25. The facts of this case bring it within the rule of these cases, for the testimony shows that the work, from its very nature and the place of its performance, had to be carried on by signals passed from one workman to another. It was of such a character that superintendence could not be dispensed with. It follows that the injury sustained by respondent cannot be charged to the negligence of a fellow servant.

Appellants complain that the court submitted two charges of negligence; first, that the accident resulted from a defect in the winch, and second, that the foreman gave the wrong signal to the winchman; whereas there was no testimony to

show a breach of appellants' duty in so far as the character of the winch is concerned. This objection is based upon the assumption that there was no testimony showing any specific defect in the winch, and that the law will not notice a general objection. At least one witness, the winchman, testified that he told the foreman that the winch was in a defective condition, saying it was "no good," and that the foreman told him to take hold of it and do the best he could. This was sufficient ground to warrant the submission of this issue to the jury.

It is further contended that the court in its instructions said that, "It is the duty of the employer to provide the employees with a reasonably safe place with reasonably safe appliances. Not only must the particular place at which the employee is put to work be reasonably safe, but the agencies in and around the building that are employed in the operation of it must be such as to reasonably provide for the safety of the man at his work." It is submitted that this is not a proper statement of the law; that the measure of the master's duty or liability is to exercise ordinary care, having regard to the hazards of the service, to provide the servant with a reasonably safe working place, machinery, tools, and appliances, and to exercise ordinary care to maintain them in a reasonably safe condition of repair. Many authorities are cited to sustain this contention, and they do sustain it; and if the instruction stood alone it would be objectionable, for it makes an employer an insurer of the safety of the servant, when his whole duty is performed when he has exercised ordinary care, having regard for the hazards of the work, to provide the servant with a reasonably safe working place, tools, and machinery, and has exercised ordinary care to keep them in a reasonably safe condition of repair. The decisions of this court, when traced from the beginning, will show that it has never intended to go beyond the rule as we now state it. The case of *Harris v. Brown's Bay Logging Co.*, 57 Wash. 8, 106 Pac. 152, is the latest expression of the court, and is relied on by respondent to sustain the instruction

quoted above. The court there met the specific objection
urged, the words "positive duty" were challenged, and it was
there held that they were the antithesis of the words "non-
delegable duty." In that case we said:

"The court charged the jury that 'the master owes the
positive duty to an employee to provide him with a reasonably
safe place in which to work, so far as the nature of the work
undertaken and the exigencies of the case will permit the
same to be made reasonably safe  .  .  .  .' The objection
is to the word positive. It is said that it in effect makes the
master an insurer of the safety of the place, while the rule is
that the master is only required to exercise reasonable care
and diligence in his performance of this duty. But we think
the appellant has given the word a meaning it does not have
in the connection in which it is here used. It will be noticed
that the adjective qualifies the noun, 'duty,' and is used
rather as the antithesis of the word 'delegable,' than as a
measure of the diligence required of a master in his effort to
comply with the requirements of the rule—it being meant to
assert that the master could not relieve himself of liability
for the nonperformance of the duty of furnishing his servant
with a safe place in which to work by delegating that duty to
another. But, however this may be, that this is a correct
statement of the rule has been repeatedly announced by this
court. *McDonough v. Great Northern R. Co.*, 15 Wash. 244,
46 Pac. 334; *Ogle v. Jones*, 16 Wash. 319, 47 Pac. 747;
*Shannon v. Consolidated Tiger & Poorman Min. Co.*, 24
Wash. 119, 64 Pac. 169; *Green v. Western American Co.*,
30 Wash. 80, 70 Pac. 310; *Czarecki v. Seattle & S. F. R. &
Nav. Co.*, 30 Wash. 288, 70 Pac. 750; *Mullin v. Northern
Pac. R. Co.*, 38 Wash. 550, 80 Pac. 814. The rule is also
stated in this form in 26 Cyc. 1104."

This might be misleading unless it be known that the court
in that case properly qualified the instruction in another in-
struction expressly admonishing the jury that the master was
not to be held as an insurer, but only to the standard of
ordinary care. So in this case is the instruction calling for
this discussion qualified. The court said:

"The law does not impose upon the employers of labor the
obligation of an insurer of life or limb of the employee; it

does not impose upon the employer the exercise of the highest degree of care that might be exercised in the furnishing of a place for the workman to do his work, but the law does have a high regard for the safety of human life, for the safety of a man who is doing his work in a way that he ought to do it; and the law imposes upon every employer of labor, with reference to the welfare of the workingman, the duty of exercising a reasonable degree of care in the furnishing of a safe place for the man to do his work and in the furnishing of materials with which he shall do his work and with which the work of the employer shall be done;"

thus bringing the instructions as a whole within the true rule. We have pursued this subject to a greater length than might seem necessary, for we realize that some confusion and misunderstanding have worked into the law, because, as in the *Brown* case, although discussing a particular objection only, it has been assumed that a general objection which was not raised had been or would be disposed of in the same way.

It is finally contended that the verdict of the jury is so excessive as to call for a reduction, on the theory that it is the result of passion and prejudice on the part of the jury. Plaintiff lost about two months of his time, during which time he suffered great pain, and his testimony is to the effect that it is impossible for him to bear the full measure of his former burden, although employed in the same class of work. While the verdict may seem large—and it is substantial—it is not so great as to warrant an arbitrary order of this court reducing it. Judgment affirmed.

DUNBAR, C. J., RUDKIN, MORRIS, and CROW, JJ., concur.