[No. 34520. Department One. August 28, 1958.]

JEFFERSON M. GERBERG, *Respondent*, v. WILLIAM A. CROSBY et al., *Appellants.*[1]

[1]Reported in 329 P. (2d) 184.

*Graves, Kiser & Gaiser, John G. Layman,* and *Robert E. Stoeve,* for appellants.

*H. Earl Davis,* for respondent.

FINLEY, J.—This is an action arising out of a collision between an automobile and a motorcycle at the intersection of Howard Street and Trent Avenue in Spokane.

Shortly before the accident plaintiff Gerberg's motorcycle was stationary, pointed in a northerly direction on Howard Street in the outside lane of traffic. At the same time the defendants' 1939 Cadillac sedan, which was being operated by Mrs. Crosby, was stationary, pointed in a southerly direction on Howard Street in the inside lane of traffic. Both parties were waiting for a green light in order to proceed. It was clear and dry. Arc lights located at all four corners illuminated the intersection.

When the signal lights governing traffic on Howard Street turned to green, Mrs. Crosby commenced to make a left

turn onto Trent Avenue, and Mr. Gerberg proceeded northerly on Howard street. The testimony is in conflict as to exactly where and how the collision in the intersection occurred. It is unnecessary to recount the details of that testimony.

Mr. Gerberg brought this action against the Crosbys for damages to compensate him for the destruction of his motorcycle and for the physical injuries to his person. Plaintiff alleged that Mrs. Crosby, while making a left turn, failed to look out for and yield the right of way to his motorcycle. Defendants answered, denying plaintiff's aforementioned allegations and affirmatively alleging that plaintiff was guilty of contributory negligence. In addition, defendants filed a cross-complaint against the plaintiff, alleging that the Gerberg motorcycle struck the Crosby car while the latter was stationary, and that plaintiff had a last clear chance to avoid the collision.

After both parties had presented their evidence, the trial judge dismissed the defendants' cross-complaint for lack of substantial evidence tending to support the allegations. The jury was instructed accordingly that they were not to consider the evidence relating to the damages suffered by the defendants. The remaining issues of Mrs. Crosby's alleged negligence and plaintiff's alleged contributory negligence were submitted to the jury under proper instructions. The jury returned a verdict in favor of the plaintiff. Defendants have appealed, assigning as error the dismissal of their cross-complaint and the introduction of certain expert testimony.

With respect to the admission of the expert testimony, appellants contend the trial judge committed prejudicial error in permitting Wayne A. Hendren, a city police officer, to give his opinion as to the point of impact between the car and the motorcycle. Hendren arrived at the scene after the accident had occurred. He based his opinion as to the point of impact on the physical facts he had personally observed at the scene of the accident.

Hendren testified that he had been on the traffic investigation squad for seven years, during which time he inves-

tigated about two thousand accidents per year; that in connection with the investigation of accidents he had attended a special school for two weeks. He testified that he had determined the point of impact in many accidents in connection with his work. When asked whether he had located the point of impact in the accident between the Crosby car and the Gerberg motorcycle, he replied that he had. Appellants objected to Hendren's testimony as to the location of the point of impact on the ground that this was not a proper subject of expert testimony. No objection was made to the qualifications of Hendren as an expert. The trial court overruled the objection and admitted the evidence. Hendren made it clear that he based his opinion solely on skid marks made by the motorcycle after the collision. He stated that the marks were such that they indicated that the motorcycle had gone into a side skid, which he characterized as an abrupt change of direction. There were no skid marks made by the car, nor did the motorcycle leave any skid marks other than the side skid marks.

If the inferences to be drawn from physical facts are not a matter of such general knowledge as to be within the common experience of laymen, opinion evidence by a *qualified* expert is admissible to assist the jury in the proper understanding of the physical facts. *Knight v. Borgan* (1958), *ante* p. 219, 324 P. (2d) 797; *Hopkins v. Comer* (1954), 240 N. C. 143, 81 S. E. (2d) 368; *Swanson v. LaFontaine* (1953), 238 Minn. 460, 57 N. W. (2d) 262. ". . . If the issue involves a matter of common knowledge about which inexperienced persons are capable of forming a correct judgment, there is no need for expert opinion. There are many matters, however, about which the triers of fact may have a general knowledge, but the testimony of experts would still aid in their understanding of the issues. . . ." Mason Ladd, Dean, The State University of Iowa College of Law, "Expert and Other Opinion Testimony," 40 Minn. L. Rev., 437, 443.

This court has long recognized that a *qualified expert* is competent to express an opinion on a *proper subject*

even though he thereby expresses an opinion on the ultimate fact to be found by the trier of fact.[2] Thus, in *Helland v. Bridenstine* (1909), 55 Wash. 470, 104 Pac. 626, the court said:

"The hypothetical question complained of was a fair summary of the facts which the respondent's evidence tended to prove. True the question embodied the very fact· that was ultimately to be found by the jury, but this does not render it incompetent. To reach their final conclusion the jury were compelled to draw an inference from the facts proven which involved a question of medical science; . . . and as that question involved a matter of medical science, it was proper to submit to the jury on the question the opinion of an expert versed in that science."

And in *Patrick v. Smith* (1913), 75 Wash. 407, 134. Pac. 1076, the court said:

"Two mining engineers, who testified that they had had experience and observation in the use of explosives in large quantities, in answer to a hypothetical question which assumed facts which the evidence tended to establish, were permitted to express an opinion that the explosion caused the loss of the water. It is argued that it was not competent for them to express an opinion upon the very issue the jury was· required to decide. The testimony was competent."

See, also, *Taylor v. Kidd* (1913), 72 Wash. 18, 129 Pac. 406; *Lynch v. Republic Publishing Co.* (1952), 40 Wn. (2d) 379, 243 P. (2d) 636; 33 Am. Jur. 95; *Een v. Consolidated Freightways* (D. C., N. Dak., 1954), 120 F. Supp. 289; same case (8th Cir., 1955) 220 F. (2d) 82; *Grismore v. Consolidated Products Co.* (1942), 232 Iowa 328, 5 N. W. (2d) 646, and 40 Minn. L. Rev. 437, *supra.*

The Model Code of Evidence, a product of the American Law Institute, makes this point very clear:

---

[2] This avoids the technical semantic arguments over what is and what is not an ultimate fact, and, as aptly noted by the Iowa Supreme Court in *Grismore v. Consolidated Products Co., infra*:

"Since opinion testimony is an exception to the rule that only fact testimony shall be received, it should, with respect to its reception, be treated the same as fact testimony, and no one has ever contended that testimony as to a fact was inadmissible simply because it might be decisive of an ultimate fact."

"Rule 401. Testimony in Terms of Opinion.

"(1) In testifying to what he has perceived a witness, whether or not an expert, may give his testimony in terms which include inferences and may state all relevant inferences, whether or not embracing ultimate issues to be decided by the trier of fact, unless the judge finds

"(a) that to draw such inferences requires a special knowledge, skill, experience, or training which the witness does not possess, or

"(b) that the witness can readily and with equal accuracy and adequacy communicate what he has perceived to the trier of fact without testifying in terms of inference or stating inferences, *and his use of inferences in testifying will be likely to mislead the trier of fact to the prejudice of the objecting party.*

"(2) The judge may require that a witness, before testifying in terms of inference, be first examined concerning the data upon which the inference is founded." (Italics ours.) Model Code of Evidence 199, Ch. V, *Expert and Opinion Evidence*, Rule 401.

In his foreword to the Model Code of Evidence, Professor Edmund M. Morgan states:

"Judges and lawyers agree with commentators that the entire body of law dealing with opinion evidence needs radical revision. Mr. Wigmore says that the opinion rule 'has done more than any one rule of procedure to reduce our litigation towards a state of legalized gambling.' The rules evolved in this country which prevent a witness from relating his relevant experiences in language naturally and ordinarily used by laymen, because phrased in terms of inferences or conclusions, have invited numberless trivial appeals and have caused many indefensible reversals. They are vague in phrasing and capable of capricious application. There is an encouraging tendency in some modern trial courts to disregard them and in the more progressive appellate courts to refuse to interfere with the trial judge's application of them."

And Judge Learned Hand stated in *Central R. Co. of New Jersey v. Monahan* (2nd Cir., 1926), 11 F. (2d) 212:

". . . The other rulings sustained objections to questions which called for the opinion of the witnesses. These were probably correct, according to the orthodox American canon, and in any event the substance of the evidence ruled

out either got before the jury or was unimportant. But in fact the questions excluded were reasonable, and it would have been better to allow them. The truth is, as Mr. Wigmore has observed at length (sections 1917-1929), that the exclusion of opinion evidence has been carried beyond reason in this country, and that it would be a large advance if courts were to admit it with freedom. The line between opinion and fact is at best only one of degree, and ought to depend solely upon practical considerations, as, for example, the saving of time and the mentality of the witness. It is hardly ever reversible error to admit such evidence; its foundation may generally be as conveniently left to cross-examination. . . ."

The supreme court of Iowa, in a documented, well-reasoned opinion in *Grismore v. Consolidated Products Co.*, *supra*, discussed the place of expert testimony in modern trials, saying:

" . . . It would be difficult to find a subject in law in which there has been more judicial confusion and quibbling, both in our own court and in those of other jurisdictions. It would also be difficult to find a single subject that has been provocative of more useless appeals than the matter of expert-opinion testimony. In the early days of court procedure there was less need of expert-opinion testimony. But with the complexity of modern life, and with the amazing growth and advancement of a myriad of matters of science, art, mechanics, discovery, invention, and industry, which touch our daily life constantly on every side, a failure to make the fullest use of expert opinions in court procedure means, in a great many cases, a denial of proof, and, necessarily, a denial of justice. For too many years too many courts have so frowned upon expert-opinion testimony and have so restricted its admission and consideration that the triers of facts have been denied aid that was essential to a proper determination of litigated causes."

As pointed out by Judge Learned Hand above, a skillful attorney can usually get the substance of the expert's opinion across to the jury even if he is not permitted to label it as expert opinion. In the case at bar, for example, appellants contended that Hendren should only have been able to state factually what he saw at the scene of the accident. In so doing, Hendren would have been permitted to testify

as to the shape and appearance of the skid marks, indicating a side skid by the motorcycle from point X, where Hendren placed the point of impact, toward the curb, where the motorcycle came to rest. This would have conveyed the same information to the jury as was conveyed when the witness testified that he found the point of impact to be at point X and explained why.

■■ As is stated in the Model Code of Evidence, *supra*, the important question is whether the use of inferences, or opinions, in testifying will mislead the trier of fact to the prejudice of the objecting party. "Necessarily, in this field, much must be left to the common sense and discretion of the trial court." *Zelayeta v. Pacific Greyhound Lines* (1951), 104 Cal. App. (2d) 716, 232 P. (2d) 572. We find no abuse of discretion in the admission of Hendren's testimony. See *People v. Haeussler* (1953), 41 Cal. (2d) 252, 260 P. (2d) 8; *Wells Truckways, Ltd. v. Cebrian* (1954), 122 Cal. App. (2d) 666, 265 P. (2d) 557; *Een v. Consolidated Freightways, supra*; *Nielsen v. Wessels* (1955), 247 Iowa 213, 73 N. W. (2d) 83; *Grant v. Clarke* (1956), 78 Idaho 412, 305 P. (2d) 752; 9C Blashfield, Cyclopedia of Automobile Law and Practice 516, 517, § 6316.

■ "Jurors and witnesses have separate and distinct functions. It is the duty of the jury to decide issues of fact. A witness could not usurp that function or invade the province of the jury, by his opinion, if he wished. It may accept it wholly, or in part, or reject it in toto. If the opinion meets with its approval it should accept it. The purpose of court trials is to ascertain the truth and rightness of the matters in issue, and the purpose of expert-opinion testimony is to instruct and aid the jury in ascertaining that truth, whether it be the ultimate fact or some minor evidential fact." *Grismore v. Consolidated Products Co., supra.* The basis for Hendren's opinion was clearly brought out in his testimony, both on direct and cross examination. It was for the jury to determine what weight should be given it. *Knight v. Borgan, supra*; *Grismore v. Consolidated Products Co., supra*; *Central Truckaway System v. Harrigan* (1949), 79 Ga. App. 117, 53 S. E. (2d) 186.

■ In the case at bar the jury was instructed generally that they were the sole and exclusive judges of the credibility of the several witnesses and the weight to be attached to the testimony of each. It perhaps would have been wise to have specifically called the jury's attention to the fact that this instruction also applied to expert witnesses. Appellants proposed no instruction to that effect. They are not in a position to urge that such omission is error. *O'Connell v. Home Oil Co.* (1935), 180 Wash. 461, 40 P. (2d) 991; *Harris v. Brown's Bay Logging Co.* (1910), 57 Wash. 8, 106 Pac. 152.

■ Appellants' final contention relates to the failure of the trial court to submit their cross-complaint to the jury on the theory of last clear chance. The doctrine of last clear chance does not come into play unless both parties were negligent and the negligence of each was a contributing (proximate or legal) cause of the accident. *Bergstrom v. Ove* (1951), 39 Wn. (2d) 78, 234 P. (2d) 548. The issue of respondent's contributory negligence was submitted to the jury. The jury returned a verdict for the respondent. This negatives any contributory negligence on the part of respondent. Therefore the doctrine of last clear chance had no applicability to his conduct. It follows that if it was error for the trial court to withdraw the issue of last clear chance from the jury, it was not prejudicial error.

The judgment of the trial court should be affirmed. It is so ordered.

HILL, C. J., MALLERY, FOSTER, and HUNTER, JJ., concur.