[Nos. 1425-2; 1426-2; 1427-2.    Division Two.    May 25, 1976.]

JOHN V. BREIVO, *Respondent*, v. THE CITY OF
ABERDÉEN, *Appellant.*
DONALD PHILLIPS, *Respondent*, v. THE CITY OF
ABERDEEN, *Appellant.*
MICHAEL G. GILLMAN, *Respondent*, v. THE CITY OF
ABERDEEN, *Appellant.*

*F. Ross Burgess,* for appellant.

*Paul L. Stritmatter* (of *Stritmatter & Stritmatter*), for respondents.

REED, J.—During the early morning hours of April 3, 1971, Ronald Claxton was transporting himself and three passengers to their homes from a party in the City of Aberdeen. Traveling at an excessive rate of speed (between 50 and 80 miles per hour in a posted 35 mile-per-hour zone), the Claxton vehicle went out of control upon entering a curve on Curtis Street, a 4-lane arterial highway. After jumping over the curb and careening along the sidewalk for approximately 66 feet, the automobile violently collided with a solid barrier erected by the defendant City of Aberdeen to protect a breakaway light standard located directly behind the barrier. The collision resulted in the death of two of the vehicle's passengers, 15-year-old Debra Phillips and 22-year-old Richard Breivo, and serious injuries to the other passenger, 18-year-old Michael Gillman, as well as the driver, Ronald Claxton. The personal representatives of the deceased passengers and Michael Gillman brought suit against the City, contending it had been negligent in erecting a solid, immovable barrier only 13 inches from the traveled portion of the roadway. Following a consolidated trial of the passengers' lawsuits, a Grays Harbor Superior Court jury awarded the plaintiffs a total of $214,000 in damages. The City of Aberdeen appeals from the judgments entered on those verdicts.

The City's assignments of error raise the following issues on appeal:

1. Did the trial court err in directing a verdict for the plaintiffs at the close of all the evidence, and thereby holding that the City had, as a matter of law, breached its duty to maintain its public highways in a reasonably safe condition?

2. Was it error to allow two highway engineers, called by the plaintiffs as expert witnesses, to express their opinion that the location of the barrier in question constituted an "inherently dangerous condition"?

In addition, the plaintiffs seek a ruling from this court permitting recovery of interest on their judgments against the City from the date those judgments were entered. For the reasons stated herein, we affirm the judgments of the trial court, but refuse to permit recovery of interest thereon.

Following presentation of all the evidence in the case, the trial court granted plaintiff's motion for a directed verdict on the issue of breach of the City's duty to maintain its public highways in a reasonably safe condition. The City offers numerous reasons why this ruling was erroneous. We find none of the assertions persuasive.

Plaintiffs and the City agree that a municipality is

> not an insurer against accident nor a guarantor of the safety of travelers. It is, however, obligated to exercise ordinary care to keep its public ways in a reasonably safe condition *for persons using them in a proper manner and exercising due care for their own safety.*

(Italics ours.) *Owens v. Seattle*, 49 Wn.2d 187, 191, 299 P.2d 560, 61 A.L.R.2d 417 (1956); *accord, Raybell v. State*, 6 Wn. App. 795, 496 P.2d 559 (1972). The City contends that the italicized portion of the above quotation was ignored by the trial court in directing a verdict for the plaintiffs on the issue of breach of the municipality's duty. The City argues that it owed no duty whatsoever to the plaintiffs in this case because the driver of the vehicle in which they were passengers was not using the highway in a "proper manner" nor "exercising due care" for his or their safety. In support of this proposition, the City relies heavily on the case of *Meabon v. State*, 1 Wn. App. 824, 463 P.2d 789 (1970). We do not agree that the *Meabon* case lends any support to the City's argument. To the contrary, a careful analysis of that case reveals that the trial court was correct in rejecting the City's contention.

The plaintiff in *Meabon* was a passenger in a car which skidded on a rain-slickened state highway, left the roadway, and overturned. The State had erected a warning sign at the scene of the accident which read: "SLIPPERY

WHEN WET." The driver of the car did not recall seeing the warning sign and admitted he was driving faster than the flow of traffic through the area. The trial court refused to give the State's proposed instruction which would have presented to the jury the question whether the State's warning of the hazardous condition was adequate. Division Three of this court reversed, expressing its concern that the failure to give the requested instruction was tantamount to imposing

> upon the state a dual standard of care in the repair and maintenance of its public highways with regard to those using the highways, *i.e.*, one applicable to drivers and another applicable to passengers. The state's compliance with the requirement of an adequate warning would be a defense from liability for injury to a driver, but not for injury to a passenger. Such a position is founded upon the reasonable foreseeability by the state of a driver's disregard for, or failure to see, a warning sign, resulting in a passenger's injury. The logical conclusion of this theory would result in the imposition of absolute liability upon the state for failure to eliminate dangerous highway conditions, resulting in injuries to passengers, without consideration of the adequacy of any warning of the dangerous condition. . . . Such is not the rule in Washington.
>
> The standard of care required of the state in the maintenance of its public highways remains the same towards both the driver and his passengers, *i.e.*, the traveling public. . . . Until plaintiff proves a breach of the state's duty of ordinary care, the state has committed no legal wrong. *In this context, a passenger's well-being is in the hands of his driver.*

(Citations omitted. Italics ours.) *Meabon v. State, supra* at 828.

The City contends that the above language from *Meabon* stands for the proposition that a governmental entity owes *no* duty to those passengers riding with careless drivers. We disagree. Whether the driver of a vehicle in any particular case failed, in fact, to exercise due care for his own safety, or that of his passengers, has no bearing whatsoever on the issue whether the State breached its duty to main-

tain the highway. The City's argument confuses the elements of duty and proximate cause in a negligence action. As the court later stated in *Meabon*, at page 830:

Defendant contends the court erred in failing to instruct on the negligence of Gary Meabon and the duties imposed on him as driver. Both issues relate to the question of whether or not Gary Meabon's manner of driving was the sole proximate cause of the accident. . . . *If the jury found defendant [State] was negligent, the question of Gary Meabon's negligence would have no bearing on the case, unless his negligence could be imputed to his sister [the passenger].*

(Italics ours.) As with the driver in *Meabon*, the manner in which Ronald Claxton drove his vehicle in this case does not dispose of the issue whether the City of Aberdeen breached its duty to maintain its public highways in a reasonably safe condition. If that duty was breached, it was breached as to *all* persons using the highway, whether they be drivers or passengers. Whether the breach, if any, was the proximate cause of the plaintiffs' injuries, or whether the negligence of the driver superseded the City's negligence, is an entirely separate question which was properly submitted to the jury by the trial court. *Berglund v. Spokane County*, 4 Wn.2d 309, 321, 103 P.2d 355 (1940).

The question remains whether this was a proper case in which to direct a verdict of negligence. Ordinarily, the question of negligence is one of fact for the jury to determine from all the evidence presented. *Gordon v. Deer Park School Dist. 414*, 71 Wn.2d 119, 122, 426 P.2d 824 (1967). A trial court may remove the question from the jury in only two classes of cases: (1) where the circumstances of the case are such that the standard of duty is fixed and the measure of duty is defined by law and is the same under all circumstances; and (2) where the facts are undisputed and only one reasonable inference can be drawn therefrom. *Baxter v. Greyhound Corp.*, 65 Wn.2d 421, 426, 397 P.2d 857 (1964), quoting from *McQuillan v. Seattle*, 10 Wash. 464, 465, 38 P. 1119 (1895). The City contends that each of the above two tests must be met

before a trial court may direct a verdict of negligence. We disagree. The first category mentioned above refers generally to those cases where a standard of care is clearly defined by statute and remains the same under all circumstances, *i.e.*, cases involving negligence per se. *See, e.g., Steadman v. Shackelton*, 52 Wn.2d 22, 322 P.2d 833 (1958). The second class of cases is entirely independent of the first and authorizes a trial court to remove a question from the jury if reasonable minds could not differ on the resolution of the issue. *See, e.g., Richardson v. Pacific Power & Light Co.*, 11 Wn.2d 288, 305, 118 P.2d 985 (1941).

The trial court in the instant case made it perfectly clear from the bench it was relying on this second test in directing a verdict of negligence against the City of Aberdeen. The court stated

under the testimony in this case it is inconceivable to me that any reasonable person could not find negligence on the part of the city to put up a frangible or breakaway light standard on a curve, and then to cancel out all of these advantages by placing an immovable object right smack in front of it and about a foot from the curb, so the motion for directed verdict on the negligence of the city will be granted.

It is our task, therefore, to examine the record to determine whether the City's conduct was so palpably negligent as to lead reasonable minds to only one conclusion.[1] We agree with the trial court.

The evidence at trial established that Curtis Street was originally constructed by the State of Washington in 1954 as a portion of State Route 101. The City of Aberdeen was responsible for the illumination of that portion of Curtis Street within the city limits. Pursuant to this responsibility, the City shortly thereafter erected the particular light

---

[1] Because it is clear the trial court did not direct a verdict in plaintiffs' favor on the theory of negligence per se, we do not consider the City's assertion that the highway safety standards promulgated by the American Association of State Highway Officials (AASHO), and introduced in evidence by plaintiffs, were erroneously accorded the weight of law by the trial court.

standard in question. In 1964 the city electrician and traffic engineer ordered the barrier be constructed in front of the light standard. The light standard was of the breakaway variety and was designed to break off if hit by a vehicle traveling 20 miles per hour or more, thereby preventing serious injury to occupants of the vehicle. The city traffic engineer told the street superintendent the barrier was necessary to keep the breakaway light standard from being "knocked down," an event which had already occurred on more than one occasion. The barrier which was erected consisted of a 12-foot utility pole buried in the ground to a depth of 9 feet. The 3 feet of pole remaining above ground was covered by a steel hot water tank, resulting in a solid barrier 48 inches in height. The Claxton vehicle failed to move the barrier although traveling at between 50 and 80 miles per hour.

In 1966, Robert Truitt, a district traffic engineer for the State of Washington, upon observing the barrier for the first time, orally requested that the City remove it. The reasons offered by Mr. Truitt were twofold: First, the barrier was a fixed object located less than 8 feet from a through lane of traffic, contrary to contemporary highway safety standards; and second, the barrier was erected on the exterior portion of a curve in the general path a car would follow should its driver lose control. The City took no action. Again in 1970, Truitt forwarded to the City complaints he had received from Aberdeen citizens concerning the location of the barrier. At that time Mr. Truitt suggested that either the barrier be removed entirely and the light standard moved further from the traveled portion of the roadway or that the barrier be removed and the light standard moved across the street to the inside of the curve. The City's own witness estimated that it would cost the City less than $100 to remove the barrier and no more than $1,500 to move the light standard across the street. Again, nothing was done.

The only explanation offered by the City for its placement of the barrier on the outside of a curve and 13 inches

from the traveled portion of the roadway was that the light standard, being of the breakaway variety, presented a risk to pedestrian traffic on the sidewalk and vehicular traffic on the highway if it fell into the street when knocked over. However, even the witness offering these justifications admitted that, had it been his decision, he would not have erected the barrier. We conclude the trial court was correct in ruling as it did. We do not believe that reasonable minds could reach any conclusion other than that the City was palpably negligent in erecting a solid, immovable barrier in such a location. Any potential benefit which could be derived from erecting a breakaway light standard was entirely negated by such action. The City acted in total disregard for the safety of those using its public highways, and in so doing, failed as a matter of law,

> to exercise ordinary care to keep its public ways in a reasonably safe condition for persons using them in a proper manner and exercising due care for their own safety.

*Owens v. Seattle, supra* at 191. The issue whether the City's negligence was the proximate cause of the plaintiffs' injuries was properly submitted to the jury for their determination. The jury's affirmative conclusion on this issue is not challenged on appeal.

The City next contends the trial court erroneously allowed plaintiffs' expert witnesses to invade the province of the jury by expressing their opinion that the location of the barrier constituted an "inherently dangerous condition."[2] The City cites *Gerberg v. Crosby*, 52 Wn.2d 792, 329 P.2d 184 (1958) for the proposition that an expert witness may not express an opinion on a matter within the common knowledge of the jury or concerning which the jury is capable of drawing its own inferences from adequate physical facts in evidence. The City submits the jury had before

---

[2]It is clear that the expert opinions now challenged by the City were not submitted for the jury's consideration as a result of the trial court's affirmative ruling on plaintiffs' motion for directed verdict. Nevertheless, we discuss the City's assignment of error as it relates to the trier of facts, whether it be the jury or the trial court.

it all the necessary physical facts concerning the barrier, including its size, its distance from the traveled portion of the roadway, and its component parts. From these facts, the City argues, the jury was quite capable of drawing its own inferences concerning the potential danger imposed by the barrier. Though the jury *may* have been capable of drawing its own inferences from the physical facts before it, it does not necessarily follow that the court erred in admitting the experts' opinions.

The admissibility of expert testimony rests within the sound discretion of the trial court and should not be overturned on appeal absent a showing that such discretion has been abused. *Gerberg v. Crosby, supra; Litts v. Pierce County,* 9 Wn. App. 843, 515 P.2d 526 (1973). In reviewing the record before us for abuse of discretion, we are mindful of the court's statement in *Gerberg v. Crosby, supra,* at page 795:

> There are many matters, however, about which the triers of fact may have a general knowledge, but the testimony of experts would still aid in their understanding of the issues. . . ." Mason Ladd, Dean, The State University of Iowa College of Law, "Expert and Other Opinion Testimony," 40 Minn. L. Rev., 437, 443.

We view this case as falling within that category. Though the jury may have a general knowledge in the area of highway safety, we do not believe that the ordinary juror has much, if any, experience concerning the proper placement and maintenance of immovable barriers on a curved portion of a city street. The expert witnesses based their opinion on numerous technical factors clearly beyond the general knowledge of a jury, including the severity of the angle at which the street was curved, the location of the barrier in the curve, the banking of the highway, and the relation of each of these factors to the posted speed limit on Curtis Street. We hold the trial court did not abuse its discretion in admitting the opinions of plaintiffs' expert witnesses. *See Martin v. Huston,* 11 Wn. App. 294, 301, 522 P.2d 192 (1974).

Finally, plaintiffs seek a ruling permitting recovery of interest on their judgments against the City from the date those judgments were entered. The plaintiffs argue that the cases of *Fosbre v. State*, 76 Wn.2d 255, 456 P.2d 335 (1969) and *Silvernail v. County of Pierce*, 80 Wn.2d 173, 492 P.2d 1024 (1972), holding that neither the State nor counties are liable for interest on tort judgments, do not apply to municipalities such as the City of Aberdeen. Therefore, plaintiffs contend interest may be recovered on a tort judgment against a municipality, citing a portion of RCW 35.31.050 in support of the assertion:

> Every city of the second or third class and town *may* create an accident fund upon which the clerk shall draw warrants for the full amount of any judgment including interest and costs . . .

(Italics ours.) We cannot agree with the plaintiffs' argument. The statute quoted authorizes, but does not require, municipalities to pay interest on tort judgments entered against them. *Campbell v. Saunders*, 86 Wn.2d 572, 546 P.2d 922 (1976). As stated in *Campbell* at page 578,

> the state and its political subdivisions are not liable for interest unless the liability arises from either the express terms or reasonable construction of a statute.

Accordingly, in the absence of any evidence indicating the City of Aberdeen has consented to pay interest on tort judgments rendered against it, the request for an award of interest is denied.

Judgments affirmed.

PETRIE, C.J., and PEARSON, J., concur.