167 P.3d 1188 (2007)
STATE of Washington, Respondent,
v.
David Ray LUCERO, Appellant.
No. 57684-4-I.
Court of Appeals of Washington, Division 1.
September 17, 2007.
*1189 David L. Donnan, Maureen Marie Cyr, Washington Appellate Project, Seattle, WA, for Appellant.
*1190 Charles Franklin Blackman, Snohomish County Prosecutor, Everett, WA, for Respondent.
AGID, J.
¶ 1 David Lucero appeals his conviction of assault with a deadly weapon in the second degree. He argues the conviction must be reversed because the trial court failed to properly instruct the jury on defense of another and did not inform the jurors that Lucero had no duty to retreat. He also contends his offender score was miscalculated because the State did not establish that the out-of-state convictions were comparable to Washington felonies. But Lucero's counsel proposed the erroneous defense-of-another instruction, so the error was invited. He also did not request a no-duty-to-retreat instruction and cannot raise it on appeal. Finally, we reject Lucero's challenge to his offender score and sentence because he acknowledged in the trial court the convictions he now seeks to dispute.

FACTS
¶ 2 On the evening of June 20, 2005, Jeff McGaa, David Tegen and David Lucero got into a fight in Marysville. As a result, McGaa suffered stab wounds. The State charged Lucero with assault with a deadly weapon in the first degree. He pled not guilty on the theory that he acted in defense of another, i.e., Tegen.
¶ 3 Before closing arguments in Lucero's trial, the parties and the court compiled the jury instructions. Instruction 9 provided, in relevant part, that to convict Lucero of first degree assault the jury had to find he "acted with intent to inflict great bodily harm." Instruction 15 defined "great bodily harm" as:
bodily injury that creates a probability of death, or which causes significant serious permanent disfigurement, or that causes a significant permanent loss or impairment of the function of any bodily part or organ.
The court also gave instruction 21, defense of another, which read:
A person is entitled to act on appearances in defending another, if that person believes in good faith and on reasonable grounds that another is in actual danger of great bodily harm, although it afterwards might develop that the person was mistaken as to the extent of the danger. Actual danger is not necessary for the use of force to be lawful.[1]
The court did not give an instruction defining "great bodily harm" in the context of the defense-of-another instruction. The jury convicted Lucero of second degree assault and returned a special verdict finding he was armed with a deadly weapon.
¶ 4 The State calculated Lucero's offender score as 7, including three convictions from California. Lucero did not submit a presentence memorandum of his own. During the sentencing hearing, he asserted that one of the California convictions had washed out. The State established that it had not, and the Court rejected Lucero's argument. Lucero did not challenge any of the California convictions on the ground that they were not comparable to Washington offenses, so the court did not do a comparability analysis. Using an offender score of 7, the court sentenced Lucero to a standard range sentence of 64 months in prison followed by 18-36 months of community custody.

DISCUSSION
I. Conviction
¶ 5 Lucero contends that the trial court's jury instructions misstated the law of defense of another. Whether jury instructions accurately state the law is a question of law we review de novo.[2]
¶ 6 The State concedes it was error to give instruction 21 without defining "great bodily injury" in the context of defense of another. While instruction 15 is a correct definition of what the jury had to find to convict the defendant of first degree assault, *1191 when read into the defense-of-another instruction,
a reasonable juror could read [the instruction] to prohibit consideration of the defendant's subjective impression of all the facts and circumstances, i.e., whether the defendant reasonably believed the battery at issue would result in great personal injury.[3]
Thus, the court properly used Washington Pattern Jury Instruction (WPIC) 2.04 to define "great bodily harm" as an element of the crime. But where it also instructs on self defense or defense of another, it must give another instruction which directs the jury to decide whether the defendant reasonably believed he or another was in danger of suffering great personal injury. As the court noted in State v. Rodriguez, 121 Wash.App. 180, 186, 87 P.3d 1201 (2004), it was with this conundrum in mind that the Supreme Court Committee on Jury Instructions modified the WPIC's to define "great personal injury" in WPIC 2.04.01 for use in cases in which the trial court gives a justifiable homicide instruction.[4]
¶ 7 We agree there was error, but the State contends it was both invited and harmless. The invited error doctrine prohibits a party from introducing an error at trial and then challenging it on appeal.[5] To be invited, the error must be the result of an affirmative, knowing, and voluntary act.[6]
¶ 8 While the parties both argue the erroneous instruction was introduced by the court, it is clear from the record that defense counsel proposed it:
[THE COURT:] I have the clarification instruction in my packet, incidentally, it's the one that Mr. Dold [defense counsel] proposed and I've numbered as 
MR. DOLD: Twenty-one, I think it's 21.
THE COURT: Yes, it's 21. . . . [7]
Instruction 21 is the instruction Lucero challenges on appeal. By proposing it, Lucero took an affirmative, knowing and voluntary action. Accordingly, he invited the error.[8]
¶ 9 Lucero also argues that the court erred in failing to instruct the jury that he had no duty to retreat. But, he never requested that instruction and does not cite any case that would require the trial court to give it sua sponte. In fact, the Washington Supreme Court has held that when a party fails to request an instruction, it "cannot predicate error on its omission."[9]
II. Sentencing
¶ 10 Lucero also contends the trial court erred in including two prior convictions from California in his offender score.[10] He did not raise this issue below, and the State argues he waived his right to raise it here. As we explain below, we agree with the State.
¶ 11 The Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, determines how offender scores are calculated. "Where a defendant's criminal history includes out-of-state convictions, the SRA requires these convictions be classified `according to the comparable offense definitions and sentences provided by Washington law.'"[11] The trial court must compare the elements of the out-of-state *1192 crime to the elements of a comparable Washington crime.[12] If the elements of the out-of-state crime are different from the Washington crime, the sentencing court may look to "the record of the out-of-state conviction to determine whether the defendant's conduct would have violated the comparable Washington [statute]."[13]
¶ 12 Lucero disputes the inclusion in his offender score of his California convictions for second degree burglary and possession of a controlled substance on the ground that he has a right to a jury trial on the issue of comparability. The Supreme Court has essentially rejected this argument.[14] The State concedes that the California burglary statute is different from the comparable Washington crime and that there was no factual inquiry in the record. It also concedes that the record does not establish which drug Lucero was convicted of possessing, a critical question in determining whether the elements of the crime are comparable. But it argues that the defendant acknowledged in the trial court both of the convictions he disputes on appeal.
¶ 13 "[A] defendant's affirmative acknowledgment that his prior out-of-state and/or federal convictions are properly included in his offender score satisfies SRA requirements."[15] At sentencing, the following colloquy took place between the trial court and defense counsel:
THE COURT: So that would potentially be a washout of one of his convictions.
MR. DOLD: August 1992.
THE COURT: Meaning his score would be a 6 instead of a 7.
MR. DOLD: That's correct.
THE COURT: And if his score is a 6 instead of a 7, what would his range be?
MR. DOLD: I don't have the range in front of me.

THE DEFENDANT: It's 33 to 43 months, Your Honor.[16]
Lucero affirmatively acknowledged that both crimes were properly included in his offender score when he only argued that the possession conviction washed out and agreed that, with the washed out conviction deleted, his offender score would then be 6. By arguing it washed out, Lucero conceded the possession charge would otherwise count toward his score. And by agreeing the score was at least 6, Lucero acknowledged the comparability of the burglary offense.
¶ 14 Lucero relies on State v. Jackson,[17] in which Division Two of this Court held that simply agreeing to the State's calculation of a standard range is not an affirmative acknowledgement for purposes of determining comparability.[18] The State contends that this holding conflicts with the Washington Supreme Court's guidance in State v. Ford[19] that a defendant's agreement that his offender score is correct waives his right to dispute it on appeal. Lucero asserts Ford is distinguishable because he submitted his own offender score calculation to the court in which he included several out-of-state convictions. We disagree. While Lucero did not initially submit his own offender score calculation, the colloquy quoted above is the functional equivalent. Had he disagreed with the assertion that the crimes were comparable and should be included, he would not have *1193 argued for an offender score of 6 or limited his argument on the drug crime to the theory that it had washed out. This is consistent with the rationale in State v. Ross.[20] There, the defendants who had agreed with offender score calculations that necessarily included out-of-state convictions were not allowed to challenge the comparability of those convictions.[21] Lucero did the same here by asserting that with one washed out conviction removed, his offender score should be 6. As the court recognized in Ross,
"[w]hile waiver does not apply where the alleged sentencing error is a legal error leading to an excessive sentence, waiver can be found where the alleged error involves an agreement to facts, later disputed, or where the alleged error involved a matter of a trial court discretion."[22]
On appeal, Lucero asserts that the State failed to prove facts supporting his out-of-state convictions. This argument is entirely inconsistent with his presentation to the trial court. And, as the Ross court noted, he has not shown on appeal "that the sentencing court committed any arguable factual . . . error" when it included the challenged convictions.[23]
¶ 15 Finally, we note that the position Lucero urges and the Jackson court took is contrary to the most basic principles of judicial economy. It encourages defendants and their counsel to remain quiet, doing and saying nothing at the trial court level where the facts should properly be determined so they may later raise the issue on appeal.[24] We do not think the appellate courts should condone or encourage such dilatory tactics. If there is an argument to be made, it should be raised in the trial court in the first instance. Failure to do so, combined with an acknowledgment of the State's offender score calculation, is and should be a waiver of the right to appeal the issue.
¶ 16 Accordingly, we hold there was an affirmative acknowledgement of comparability and no remand is necessary.
¶ 17 We affirm Lucero's conviction and sentence.
WE CONCUR: DWYER and COX, JJ.
NOTES
[1] (Emphasis added.)
[2] State v. Linehan, 147 Wash.2d 638, 643, 56 P.3d 542 (2002), cert. denied sub nom. Linehan v. Washington, 538 U.S. 945, 123 S.Ct. 1633, 155 L.Ed.2d 486 (2003).
[3] State v. Walden, 131 Wash.2d 469, 477, 932 P.2d 1237 (1997).
[4] See Walden, 131 Wash.2d at 475 n. 3, 932 P.2d 1237 (disapproving use of the phrase used here  great bodily harm  in the context of self-defense instructions because it is defined as an element of first degree assault); WPIC 2.04.01, comment.
[5] State v. Henderson, 114 Wash.2d 867, 868, 792 P.2d 514 (1990).
[6] In re Call, 144 Wash.2d 315, 328, 28 P.3d 709 (2001).
[7] (Emphasis added.)
[8] Because we hold the error was invited on this basis, we do not address the State's theory of invited error or its argument that the error was harmless.
[9] McGarvey v. City of Seattle, 62 Wash.2d 524, 533, 384 P.2d 127 (1963) (citing Gerberg v. Crosby, 52 Wash.2d 792, 329 P.2d 184 (1958); Atkins v. Churchill, 30 Wash.2d 859, 194 P.2d 364 (1948)).
[10] Lucero does not challenge the propriety of including the third of his California convictions.
[11] State v. Ford, 137 Wash.2d 472, 479, 973 P.2d 452 (1999) (quoting State v. Wiley, 124 Wash.2d 679, 683, 880 P.2d 983 (1994)).
[12] State v. Morley, 134 Wash.2d 588, 606, 952 P.2d 167 (1998).
[13] Ford, 137 Wash.2d at 479, 973 P.2d 452 (citing Morley, 134 Wash.2d at 606, 952 P.2d 167).
[14] See State v. Weber, 159 Wash.2d 252, 255, 149 P.3d 646 (2006) (prior juvenile convictions), cert. denied sub nom. Weber v. Washington, ___ U.S. ___, 127 S.Ct. 2986, ___ L.Ed.2d ___ (2007); State v. Jones, 159 Wash.2d 231, 244 and n. 8, 149 P.3d 636 (2006) (community placement status), cert. denied sub nom. Thomas v. Washington, ___ U.S. ___, 127 S.Ct. 2066, 167 L.Ed.2d 790 (2007).
[15] State v. Ross, 152 Wash.2d 220, 230, 95 P.3d 1225 (2004) (emphasis omitted) (citing Ford, 137 Wash.2d at 483 n. 5, 973 P.2d 452).
[16] (Emphasis added.)
[17] 129 Wash.App. 95, 117 P.3d 1182 (2005), review denied, 156 Wash.2d 1029, 133 P.3d 474 (2006).
[18] Id. at 107, 117 P.3d 1182.
[19] 137 Wash.2d 472, 483 n. 5, 973 P.2d 452 (1999).
[20] 152 Wash.2d 220, 95 P.3d 1225 (2004).
[21] Id. at 225-26, 231, 95 P.3d 1225.
[22] Id. at 231, 95 P.3d 1225 (quoting In re Personal Restraint of Goodwin, 146 Wash.2d 861, 874, 50 P.3d 618 (2002)).
[23] Id. at 232, 95 P.3d 1225.
[24] See Ford, 137 Wash.2d at 486, 973 P.2d 452.